OSMER B. WHEELER, Appellant, *v.* EDWARD F. ROBINSON, Respondent ; MERCHANTS AND MANUFACTURERS' NATIONAL BANK of Middletown, N. Y., Appellant.

*Material misrepresentation as to the quantity of land sold — mutual mistake requiring reduction in price — laches.*

Where the owner of a farm innocently, but untruly, states the quantity of land contained therein, and a purchaser, in reliance upon such statement, enters into a contract and takes a deed of the land, and subsequently finds that the quantity is materially less than that stated, he is entitled to the interposition of a court of equity to correct the mistake upon the theory that there was a mutual mistake as to a material fact.

A material variation enables the purchaser not to avoid the entire contract, but to abate the price.

A purchaser will not be allowed to shut his eyes, either carelessly or willfully, and receive a conveyance of property, without using the ordinary means and care that a business man of ordinary capacity would use under the circumstances, and then afterwards claim that at the time his deed was executed he understood that some other or different estate or interest than that specified therein was to be granted by the deed. Relief should be granted only in cases where the evidence is clear, and where the party claiming the benefit of the rule has exercised that care which the law requires of men who engage in business transactions.

There is a wide difference between a mutual mistake and a false representation that induces a purchase; when a vendor says that he does not know the exact number of acres in the parcel of land to be conveyed, but thinks there are a certain number therein, he can be held liable for a false representation only in case he had not reasonable grounds for his belief as stated, and in order to avoid the deed given under such circumstances there must be a finding to that effect.

It is the duty of a grantee if he desires to repudiate a conveyance of property to him and the giving of a mortgage by him to secure the purchase price thereof, on account of the false representations of the grantor, to do so as soon as the fraud is discovered by him.

CROSS-APPEALS by the plaintiff, Osmer B. Wheeler, and by the defendant Merchants and Manufacturers' National Bank of Middletown, N.Y., from a judgment of the Supreme Court in favor of the defendant Edward F. Robinson, entered in the office of the clerk of the county of Sullivan on the 24th day of April, 1894, upon the report of a referee adjudging a certain deed and a certain mortgage to be fraudulent and void, canceling the same, and determining the rights of the parties in certain premises to foreclose which this action was brought, with notice of an intention to bring up for review upon such appeal all questions of law and fact, and the rulings of the referee.

The action was brought to foreclose a mortgage given by the defendant Robinson to the plaintiff to secure purchase money upon the lands described in the complaint. The answer sets up false representation made by the plaintiff at the time of the purchase. The mortgage was not accompanied by a bond and created no personal liability on the part of the defendant, but did contain a stipulation that it was the intention of the mortgage to create a lien on the premises, and that no personal liability on the part of the mortgagor should be created or inferred. The referee found in favor of the defendant Robinson, and adjudged the deed and mortgage to be void, and the plaintiff and the defendant bank appeal.

*John P. Roosa, Jr.,* for plaintiff, appellant.

*Daniel Finn,* for defendant, appellant.

*T. F. Bush,* for the respondent.

STOVER, J.:

The false representations relied upon to defeat the plaintiff's claim are:

That the plaintiff falsely and fraudulently represented that the premises consisted of 1,200 acres of good quarry land, and that he was the owner thereof, free and clear of incumbrance. That he knew, from his experience and inspection, that the stone was pure bluestone, easily elevated and quarried, and superior to other quarries in the vicinity where the premises were situated. That he had quarried stone, and had made money in working the quarries. Also, that he owned certain lands which it appeared he did not own, and that he had represented that certain docks which were on the

premises were owned by him. Further, it is alleged that the premises did not contain 1,200 acres of land; that it was not good quarry land; that the plaintiff did not own certain docks, and that he was not the owner of the premises free and clear, but that he had agreed to sell and convey the same to one Thomas Wilson and others, the legal title to be taken by one Everett, in trust.

As to the allegation that there were not 1,200 acres of land in the premises, it appears that the tract of land sought to be conveyed was wild, uncultivated land, and described in the deed as portions of certain lots situated in the town of Forestburgh, and the referee has found that the purchase price was agreed upon on a basis of ten-dollars per acre. The referee has found that at the time of the negotiations "the plaintiff represented to said defendant that said premises consisted of 1,200 acres of good quarry land." He has also made a further finding "That the plaintiff told Robinson, before the contract dated February 10, 1893, was executed, that he was selling all the property he owned on the westerly side of the railroad. That he had built the stone docks at his own expense, and that he was selling his rights in the docks. That he thought that there was about 1,200 acres in the tract, but was not positive as to the exact number of acres." The docks were built alongside the railroad, and were, it seems to me, apparently upon railroad lands.

The referee has found also that "there was not, altogether, including the land covered by the pond or reservoir of the Canal Company, to exceed 1,120 acres," and that there were seventy-five acres of this subject to some rights of the canal company.

It is true, as contended by the defendant, that a material misrepresentation as to the quantity of land might be sufficient to invalidate a deed, and it has been held that where the owner of a farm innocently, but untruly, states the quantity of land contained therein, and a purchaser, in reliance upon the statement, enters into a contract and takes a deed, and subsequently discovers that the quantity is materially less than that stated, he is entitled to the interposition of a court of equity to correct the mistake. (*Paine* v. *Upton*, 87 N. Y. 327.)

That case, however, went upon the theory that there was a mutual mistake upon a material fact, no fraud or misrepresentation, it being understood that both parties entered into the agreement upon

the understanding that there was a certain number of acres, and that a material variation entitled the purchaser, not to avoid the entire contract, but to abate the price. There is no question of a mistake of fact in this case, but it is alleged that the plaintiff has made a false representation. What is the false representation that he has made? I think we must assume that the plaintiff is entitled to the benefit of the finding set forth, viz.: " That he thought that there was about 1,200 acres in the tract, but was not positive as to the exact number of acres." If under such a statement of facts the defendant had bought 1,200 acres of land, and his deed covered 1,200 acres of land, it might be said that he had relied upon the statement of the plaintiff in that regard. But it must be, I think, quite evident that he did not, and could not, have relied upon the statement of the plaintiff as to the quantity of land described. This was a tract of wild land; there had been various conveyances from time to time. Defendant had an abstract of the premises, and was notified of these conveyances at the time, and yet, knowing the uncertainty that was existing, and the plaintiff having told him that he did not know the exact number of acres in the lot, he takes a deed describing a tract of land which contains various reservations, with references to deeds by which such reservations were created, and containing this statement: " This description above given being intended to include all the lands owned by said Wheeler, in lots 33, 34 and 35, of the first division of the Minisink patent, which lies west of the lands of Port Jervis, Monticello and New York Railroad."

A purchaser of land may rely upon the representations of the vendor, but if he intends to rely upon such representations he ought at least to obtain by his deed, and his deed should describe, the interest and the extent of the purchase made by him. A purchaser ought not to be allowed to shut his eyes, either carelessly or willfully, and receive a conveyance of property without using the ordinary means and care that a business man of ordinary capacity would use under the circumstances, and then afterwards claim that at the time his deed was executed he understood that some other or different estate or interest was to be granted by the deed. To permit this practice would be to open the door to fraud, and would invite purchasers of land to speculate at the expense of vendors, if, when called upon to perform on their part, they were permitted to

repudiate their contracts upon such excuses. The rule should not be extended, but should be applied only in cases where the evidence is clear, and where the party claiming the benefit of the rule has exercised that care that the law requires of men who engage in business transactions. There is a wide difference between a mutual mistake and a false representation that induces a purchase. In this case the vendor says he does not know the exact number of acres, but thinks there are 1,200. He can be held liable for a false representation only in case he had not reasonable grounds for this belief as stated, and in order to avoid the deed there must be a finding to that effect.

Another representation made was that the land was quarry land. The evidence shows that the first contract was entered into in the winter, when there was some snow and ice on the ground, but that some of the quarries were being worked at the time. The respondent's claim is that he at that time could not see the property. But the evidence shows that he did go upon the property, and that he did look at a portion of it at least. He testifies that in March following the sale he employed experts, and went over the land for the purpose of determining their value as quarry lands, and there was nothing to prevent his making a full examination when the snow went off in the spring. The original contract for the sale of the property provided that the defendant should execute his bond and mortgage for the purchase price. When the time came for the delivery of the deed, there having been some negotiations before that, and the respondent having had the abstract examined by his counsel, the respondent made a demand for a modification of the contract, and the referee finds that the respondent was relieved from executing the bond mentioned in the contract for the reason that on account of the premises being covered with snow and ice he was unable to see the premises, and was forced to rely upon the representations made by the plaintiff respecting the same. Respondent testifies that he made the statement that he relied upon plaintiff's statement at the time the contract was made.

It is difficult to see why the respondent should be relieved from the payment of the purchase price if he relied upon the representations of the plaintiff. The very fact, it seems to me, that he was relieved from the personal obligation to pay the purchase price

secured by the mortgage, after he had contracted to give his bond, indicates that he did not rely upon the representations of the plaintiff, but protected himself by having the property itself only liable for the balance of the purchase price.

I shall not discuss the other representations upon which considerable time was taken on the argument, and which seem to have impressed the referee, viz., as to the payment for the release of the quarry rights of other persons. A large amount of testimony was taken on this subject, but it is clear that this was a matter that was understood perfectly by the parties at the time the deed was given, the deed itself referring to quarry rights, and an abatement of purchase price to the extent of $500 was agreed upon on account of the existence of those rights.

The other representation is as to the failure of title. The evidence shows that there had been a contract to convey the premises to Everett as trustee, but upon the trial of the cause deeds and releases were presented, releasing whatever interest the trustee or the beneficiaries under the deed had in the premises. It appears that the property had for thirty years been in the possession of the plaintiff, and at the time the deed was delivered an abstract was furnished, which abstract showed the conveyance to said Everett by the plaintiff. The referee has found that the interests of the parties under that deed had been conveyed to the plaintiff at the time of the trial of this action, and has not found that the conveyance to the trustee was valid, but only that it was a cloud upon the title. I am unable to see how the statement of plaintiff, conceding the most claimed for it by respondent, can be construed as a false representation as to the title. The defendant Robinson entered upon the premises after the delivery of his deed, and continued in possession down to December, 1891, after the commencement of this action, when he sent notice to the plaintiff that he would give him possession of the property, and plaintiff thereupon took possession of the property. At this time default had been made under the conditions of the mortgage, and this action had been brought for foreclosure. There was no offer to reconvey, and the referee does not find that there was any intent to abrogate the sale.

The referee finds that " The defendant Robinson is not entitled to recover as damages any part of the loss he sustained in operating

the quarries, as the main part of the business was carried on by him after he had discovered the fraud, or had reasonable grounds to suspect that he had been deceived."

He further found: "That the defendant Robinson, about the first of April, 1891, went over the property and looked at and examined the quarries."

It was the duty of the defendant, if he desired to repudiate the transaction on account of the false representations, to do so as soon as the fraud was discovered. It would seem from the finding of the referee quoted above, that he went on with full knowledge of the fraud, if any had been perpetrated upon him, and had continued the quarrying down to and after the commencement of this action. From the language used by the referee it is quite evident that he has been misled as to the effect of the agreement with regard to the quarry rights, and has attached more or less weight to the representation made by the plaintiff in regard to the quarry rights of various parties in occupancy of the premises. And so as to the deed to the trustee which is found to be a cloud upon the title. It would be very difficult to find, from the evidence in this case, that there was any false representation with regard to that deed, as the abstract was in possession of the attorney for the defendant for some time before the conveyance to him was made.

The referee having found upon insufficient evidence, as I think, upon some of the material branches of the case, we cannot say how far his findings upon the other questions involved have been affected by these erroneous findings.

I think the judgment entered upon the report of the referee should be reversed, a new trial granted, and the referee discharged.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed, referee discharged, a new trial granted, costs to abide the event.