THORA CAROLINE JACOBSON v. A. G. ANDERSON and Another.

June 2, 1898.

Nos. 11,164—(233).

**Guardian—Delivery of Ward's Estate to Probate Judge—Release of Sureties.**

At the expiration of a guardian's trust, the estate, moneys and effects remaining in his hands upon the settlement of his accounts with the probate court cannot be by him paid and delivered over to such court, so as to exonerate him or the sureties on his bond from their being paid and delivered to the person lawfully entitled thereto. The probate judge is not such person.

**Settlement of Account—Order of Court Conclusive upon Guardian's Sureties.**

If a surety stipulates for any particular method by which the liability of his principal or himself shall be fixed, he is bound by it. *Held*, that the sureties on the guardian's bond in this action were concluded by the order of the probate court entered against him, finding the amount of money in his hands upon his settlement of his accounts as such guardian, and that it was due from him to the persons lawfully entitled thereto.

Appeal by plaintiff from an order of the district court for Polk county, Ives, J., denying a motion for a new trial, after a verdict in favor of defendants, directed by the court. Reversed.

*A. R. Holston*, for appellant.

*Ole J. Vaule*, for respondents.

BUCK, J.

This action was brought in the district court of Polk county to recover a certain sum which the probate court of that county had found to be due from plaintiff's former guardian, C. Saugstad. The action is brought by plaintiff's present guardian against Saugstad's bondsmen, upon the ground that he did not account for and pay over moneys which he had in his hands as such guardian. The probate court authorized the bringing of this action by the present guardian. It appears that on April 16, 1890, the probate court of Polk county appointed C. Saugstad guardian of the person and estate of Thora C. Jacobson, a minor. Thereafter, on November 10, 1893, Saugstad, as such guardian, gave a bond in due form in

the sum of $1,000, with the defendants Anderson and Olson as sureties, the conditions and obligations of which were as follows:

"The condition of this obligation is such that if the above-bounden Christian Saugstad, in the capacity of guardian, shall and will faithfully, in all things, execute the duties of his trust, as guardian of the persons and the estates of Elesif P. and Thora C. Jacobson, minors, according to law; and shall make a true inventory of all the estate, real and personal, of his said wards that shall come to his possession or knowledge, and shall return the same into the probate court of the proper county within three months; and shall dispose of and manage all such estate according to law, and for the best interest of the said wards; and shall faithfully discharge his trust in relation thereto, and also in relation to the custody, education, and maintenance of his said wards; and shall render an account on oath of the property, estate, and moneys of the said wards in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of the same, within one year after his appointment as such guardian, and at such other times as the probate court shall direct; and shall, at the expiration of his trust, settle his account with the probate court, and pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement,—then this obligation shall be void; otherwise, to remain in full force and virtue.

Signed, sealed, and delivered    C. Saugstad.    [Seal.]
    in presence of    A. G. Anderson.  [Seal.]
        C. M. Benson.    N. K. Olson.  [Seal.]"

It also appears to be conceded that Saugstad permanently removed from the county of Polk and state of Minnesota in the spring of 1895, and settled at Bella Coula, in British Columbia. The record shows that the present guardian, who brought this action for her ward Thora Caroline Jacobson, was appointed such guardian on November 4, 1895, by the probate court of said county of Polk, but that Saugstad was not formally discharged as such guardian until February 19, 1896, at which time he settled his account, and admitted a balance due his ward of $265.51.

Subsequently, the present guardian, Mathilda Wilson, assuming that such settlement was illegal, and that no notice of the time and place of the examination of said account was fixed by the probate court, and no notice thereof given to the ward and persons interested (although the order discharging him recites that due notice

was given and served), petitioned that a citation be issued out of
said probate court to Saugstad to show cause why his pretended
final account should not be set aside as illegal and void, and that he
be required to turn over to the present guardian all the moneys of
said minor. A citation was accordingly issued requiring him to
appear before the probate court on April 26, 1897, and show cause,
if he had any, why he should not make his final account as such
guardian, and pay and deliver over to his successor, Mathilda
Wilson, as guardian of said ward, all moneys belonging to said
ward. At the time and place so designated Saugstad appeared and
the hearing was continued until June 7, 1897, when all parties ap-
peared and a trial of the matters was had upon the merits. It does
not appear from the record that Saugstad made any objection to the
regularity of the appointment of Mathilda Wilson as guardian, or
to her acting in the proceeding in such capacity, and the probate
court recited in said order that she was the present guardian, and
made the further order as follows:

"The court, upon hearing said parties and upon examining the
records and files herein, and being fully advised in the premises,
finds that said Saugstad still has in hand, as such guardian, includ-
ing interest thereon, the sum of $289.77, the property of said minor,
his said ward, which sum said Saugstad has wholly failed to ac-
count for or pay over, and which said Saugstad still retains, as
appears by his account filed herein; wherefore the court finds, and
it is hereby ordered, that said Saugstad pay over to said Mathilda
Wilson, for the use of her said ward, the sum of $289.77, the same
being the amount now in his hands belonging to said minor.
    Dated June 7th, 1897.
                                  By the Court:
                                      Ole E. Hagen,
                                          Judge of Probate.
    Duly filed and recorded June 7, 1897."

This order was never appealed from nor reversed, and we are of
the opinion that it stands conclusive between the parties. See
Mumford v. Hall, 25 Minn. 347. It did, however, appear upon the
trial of this action, by uncontradicted evidence, that Saugstad had,
on February 20, 1896, paid to C. M. Benson, then judge of probate
of Polk county, the sum of $265.51, on account of the estate of

Thora C. Jacobson, being the sum which he had accounted for as being in his hands as her guardian.

Why Benson did not pay over this money to the proper party, or what has become of it, does not appear. If this payment relieved Saugstad of any charge of intentional dishonesty, as it certainly should, it did not release him or his bondsmen from a personal liability. Nowhere do we find in the statute any authority permitting the guardian to make such payment to the probate court. G. S. 1894, § 4544, subd. 4, requires the guardian,

"At the expiration of his trust to settle his accounts with the probate court, and to pay and deliver all the estate, moneys and effects remaining in his hands or due from him on such settlement, to the person lawfully entitled thereto."

Who is the person lawfully entitled thereto? Not the probate judge, for it does not belong to him. He is neither the owner nor trustee, nor entitled to its custody. The judge is by law made the judicial arbiter as between the guardian and the parties entitled to the estate. When he has performed this duty, his authority over the subject-matter ends, unless it be to enforce his decisions upon the settlement and accounting which he has heard. Suppose in this very case the amount had been $10,000, or a greater sum, and it was paid over to an insolvent or dishonest probate judge, and it disappeared the way this amount has evidently gone; what remedy would the owners of the property have upon a probate bond of $1,000, for that is the sole amount which a probate judge is required by statute to give before entering upon the discharge of the duties of his office?

The statute clearly contemplates that when a guardian has settled his accounts with the probate court, and his guardianship has terminated, whatever estate, money, and effects remain in his hands or are due from him on such settlement shall be turned over to the guardian who succeeds him, or, if the guardianship is fully ended, to the ward or to the person who is lawfully entitled thereto as owner, trustee, or in such other capacity as may lawfully appear, but not to the probate court as such officer. We think that it would be against public policy to permit the probate judge to be burdened with the annoyance, inconvenience, and responsibility

which would inevitably result in making him the custodian, and responsible for the safe-keeping, of such property, either during a period of litigation or in the contingency that the parties lawfully entitled thereto could not be readily found. Such payment, therefore, to the wrong party, even though made bona fide, does not release Saugstad, and the determination of the probate court as to the amount due from Saugstad as guardian was conclusive as to him, as he voluntarily litigated that question, without any objections of any kind as to parties or the subject-matter. It was also binding and conclusive upon Saugstad's sureties, because he violated the conditions which, by the terms of the bond, they had contracted he should perform. The rule of this court in this respect is stated by Justice Mitchell in the case of Pioneer S. & L. Co. v. Bartsch, 51 Minn. 474, 477, 53 N. W. 764, as follows:

"Of course every one is familiar with the rule that, as against any one except the parties and their privies, a judgment is evidence only of the fact of its recovery. What are sometimes called exceptions to this rule are not exceptions, but do not fall within the rule at all, depending solely upon the principle that one may contract to be answerable to another upon such lawful conditions as he pleases. Hence, if a surety stipulates for any particular method by which the liability of his principal or of himself shall be fixed, he is bound by it. If he has undertaken, either expressly or by implication from the position which he has assumed with reference to pending litigation, to be responsible for the result of a suit between others, to which he is not a party and to which he has not been made privy by notice and an opportunity to defend, then, in the absence of fraud and collusion, the judgment against the principal alone would be conclusive evidence against him of every fact which it was necessary to find to recover such a judgment. This would be because he had so contracted."

Brandt, Sur. §§ 110, 580.

Order reversed.