MATHILDA LYNGEN v. MILLER TESSUM AND SOUTHERN
SURETY COMPANY.
RICHARD HUGHES v. MILLER TESSUM AND SOUTHERN
SURETY COMPANY.
OSCAR TESSUM v. MILLER TESSUM AND SOUTHERN
SURETY COMPANY.[1]

December 10, 1926.

Nos. 25,670, 25,668, 25,669.

**When ward dies property in hands of his guardian in which he had only life estate goes to the remaindermen.**

1. Where a ward dies, property in the hands of his guardian in which he had only a life estate does not pass to the representative of his estate, but to the remaindermen; and when the probate court has settled the final account of the guardian and directed him to turn such property over to the remaindermen, they may maintain an action to recover it.

**Guardian and sureties are concluded by settlement of guardian's final account.**

2. The judgment of the probate court settling the final account of the guardian is final and conclusive upon the guardian and his sureties as to the liability of the guardian and the amount thereof.

**Evidence properly excluded as to dissipation of property before additional security given by guardian.**

3. Evidence to show that property charged to the guardian in his final account as settled and allowed by the probate court had been dissipated before the execution of a bond given by the guardian as additional security was properly excluded.

Guardian and Ward, 28 C. J. p. 1096 n. 13 New; p. 1239 n. 73 New; p. 1292 n. 19; p. 1294 n. 68, 69, 70, 71; p. 1295 n. 72, 73, 74; p. 1298 n. 40; p. 1317 n. 4.

[1]Reported in 211 N. W. 314.

Defendants appealed from orders of the district court for Fillmore county, Peterson, J., denying their motions for a new trial. Affirmed.

F. H. Durham and Arthur H. Lindeman, for appellants.

F. G. Sasse, R. A. Dunnette and Hopp & Larson, for respondents.

TAYLOR, C.

The facts which resulted in this litigation are briefly as follows: In 1899, Elling Tessum died intestate owning a farm of 119 acres of which 80 acres were his homestead. He left surviving him his widow, Margrethe Tessum, and five children, Olaf Tessum, William Tessum, Miller Tessum, Mathilda Lyngen and Oscar Tessum. The mother acquired the interest of her son William in the farm who died prior to the transactions involved herein. In 1918 Olaf Tessum and Miller Tessum were appointed guardians of their mother, an incompetent then 78 years of age, and they filed an inventory in which they listed the farm as her property. Her interest in the farm was the only property she possessed. In 1919 the farm was sold under license from the probate court for the sum of $27,013. The four living children joined in the deed and entered into a stipulation that the proceeds of the sale, after paying a small amount of indebtedness, should be invested by the guardians, that the mother should have the interest therefrom as long as she lived, and that at her death the principal should be distributed as provided in the stipulation. Pursuant to this arrangement, the entire amount received for the farm was turned over to the guardians who managed and handled it thereafter. In January, 1920, they filed an account in which they charged themselves with the amount received for the farm and for the crops of 1918 and 1919, and credited themselves with various expenditures, and reported the amount then invested. In May, 1921, they filed another account setting forth their receipts and expenditures since the former account and reporting the amount then invested. In March, 1923, Olaf Tessum, who apparently had taken no active part in the guardianship matters, resigned and was discharged by the probate court; and Miller Tessum, who apparently

had managed and conducted the guardianship affairs theretofore, was continued as sole guardian on giving an additional bond in the sum of $20,000 with the Southern Surety Company as surety thereon. In April, 1925, the mother died. Richard Hughes was appointed special administrator of her estate and later was appointed general administrator thereof. In June, 1925, pursuant to a citation from the probate court, Miller Tessum filed his final account as guardian in which he charged himself with the amount received for the farm and for the crops of 1918 and 1919, and also with the amounts received as interest, and credited himself with various expenditures and reported the balance on hand.

On August 8, 1925, the probate court adjusted, settled and allowed his final account, and directed him to distribute and turn over the funds in his hands to the several persons and in the several amounts specified in the decree. The decree directed him to pay to Oscar Tessum the sum of $1,330 due Oscar for taking care of the mother, and to turn over to each of the four children (including himself) the sum of $4,702.60 as the share of the property to which each was entitled under the terms of the stipulations previously entered into and filed with the court. It further directed him to turn over to Richard Hughes, as representative of the estate of the mother, the sum of $6,830.62 and a small dwelling purchased for and occupied by the mother in her lifetime. He failed to turn over to Mathilda Lyngen, Oscar Tessum or Richard Hughes the several amounts awarded to them by the probate decree, and they brought separate actions against him and the Southern Surety Company as surety on his bond to recover the respective amounts so awarded to them. The three actions were tried together in January, 1926, and the court made findings of fact and conclusions of law and ordered judgment in each action in favor of the plaintiff for the amount claimed. In each action the defendants appealed from an order denying a new trial.

1. Defendants contend that Mathilda Lyngen and Oscar Tessum cannot maintain their action "for the reason that the ward's estate had not been probated and no decree of distribution made."

Section 8949, G. S. 1923, provides:

"When the disability of any person under guardianship is removed, or he dies or the guardian resigns, the guardian shall render a final account of his guardianship to the probate court, and turn over all property of his ward in his possession to such ward or his legal representative."

Defendants assign as the grounds for the above contention that under this statute the right to the possession of the ward's property passed at her death from her guardian to the administrator of her estate; that an action to recover a distributive share of an estate in the hands of an administrator will not lie until a decree of distribution has been made by the probate court; and that no such decree has been made in the estate of the ward. Conceding the correctness of these propositions, they do not apply here for the court awarded to these two plaintiffs only their respective shares of property in which the mother had only a life estate. Her life estate ended at her death. The rights she had previously possessed in that property terminated at that time and no interest of hers survived to pass to the administrator.

Defendants seem to make a point on the fact that the statute requires the guardian to "turn over all property of his ward in his possession to such ward or his legal representative" and makes no provision for turning over property to anyone else. It is only the *"property of his ward"* that is to be turned over to the representative. When the ward dies, property in which he had only a life estate ceases to be his property for any purpose and is not within the above provision. Here the death of the mother terminated both the guardian's trust and her estate in the property involved in these two suits, and the title of the plaintiffs thereto as remaindermen became absolute. It is their property free and clear from any claim on the part of the administrator; and their right to recover it, after the probate court had settled the guardian's account and directed him to turn it over to them, is not dependent upon the existence of a statute directing him to turn it over.

2. Defendants further contend that they are liable only for property received by Miller Tessum in his official capacity as guardian,

and that part of the fund received by and charged to him was not received in his official capacity for the reason that it did not belong to his ward but to the other heirs of Elling Tessum as the proceeds of their interest in the farm.

The probate court settled the account of Miller Tessum, fixed and determined the amount of property now in his hands as guardian, and directed him to turn it over to the several persons found by the court to be entitled thereto. This judgment of the probate court is final and conclusive both upon him and the sureties upon his bond. It cannot be attacked nor its correctness questioned in this action. Cross v. White, 80 Minn. 413, 83 N. W. 393, 81 Am. St. 267; Jacobson v. Anderson, 72 Minn. 426, 75 N. W. 607; Holden v. Turrell, 86 Minn. 214, 90 N. W. 395; Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302; Connecticut M. L. Ins. Co. v. Schurmeier, 125 Minn. 368, 147 N. W. 246; First Trust & Sav. Bank v. U. S. F. & G. Co. 163 Minn. 168, 203 N. W. 612; Hendri v. Sabin, 86 Minn. 108, 90 N. W. 159; In re Hause, 32 Minn. 155, 19 N. W. 973.

3. Defendant surety company further contends that the court erred in sustaining an objection to its offer to show by Miller Tessum that the property which came into his hands in his capacity as guardian had been dissipated before its bond went into effect.

Plaintiffs raise the point that this question is not before the court for the reason that the motion for a new trial was made by defendants jointly and that one defendant cannot avail itself of a ground therefor not available to the other. Miller v. Adamson, 45 Minn. 99, 47 N. W. 452; McKasy v. Huber, 65 Minn. 9, 67 N. W. 650; Smith v. Corcoran, 81 Minn. 219, 83 N. W. 835. It may be doubtful whether we should adhere to the rule that, where a motion for a new trial is made jointly by two or more parties, it will be denied as an entirety if correct as to any of them. For criticism of this rule see Dun. Practice, § 960; 14 Enc. Pl. & Pr. 872; Boehmer v. Big Rock Irr. Dist. 117 Cal. 19, 48 Pac. 908; Trainer v. Kossuth County, 199 Iowa, 55, 201 N. W. 66; Equitable Mtge. Co. v. Gray, 68 Kan. 100, 74 Pac. 614. Plaintiffs having stated they do not insist on this point we pass it.

Miller Tessum inventoried the entire property as received by the guardians in their official capacity. In the accounts filed in 1920 and 1921, he reported the entire proceeds of the farm as received by the guardians and, less expenditures listed, as on hand and invested in notes and mortgages. In his final account, he adopted these prior accounts as correct, and further reported that the entire amount received, less expenditures listed, was still on hand and represented by notes and mortgages in his possession. There was no claim at the hearing upon this final account that any of the property had been lost or dissipated, and the probate court fixed and determined the amount now in his hands as guardian. This judgment is binding and conclusive upon the surety as well as upon him. See cases previously cited. In 12 R. C. L. 1165 it is said:

"If the guardian's account has been settled in probate or in chancery, it is generally held that the judgment is conclusive against the sureties, in the absence of fraud or collusion, as to the guardian's liability and the amount thereof."

In 28 C. J. 1294 it is said:

"In the absence of fraud or mistake, and in the absence of an appeal or of reversal or modification on appeal, a final judicial settlement by a guardian is in most states conclusive on the sureties as to the existence and amount of the guardian's liability to the ward, even where the sureties were not made parties to the proceeding or notified thereof, or where they did not participate therein."

Moreover the bond in question was not given as a substitute for or to take the place of prior bonds, but merely as additional security.

"The authorities agree that, where a second bond is merely additional or cumulative security, it covers past defaults and that the sureties on both bonds may be held liable to the ward for such defaults." 28 C. J. 1292; see also 28 C. J. 1298.

The proffered testimony was properly excluded on the ground that both defendants were concluded by the judgment of the probate court and there is no need to consider whether it might properly have been excluded on other grounds.

In each of these three cases the order appealed from is affirmed.