## STATE v. WILLIAM KASAL AND ANOTHER.[1]

December 21, 1928.

No. 26,910.

*George Nordlin* and *Louis W. Martin,* for appellants.

*G. A. Youngquist,* Attorney General, and *William O. McNelly,* County Attorney, for the state.

[1]Reported in 222 N. W. 575.

WILSON, C. J.

Defendants appealed from an order denying their motion for a new trial after having been convicted of giving a public dance without a permit from the town board of supervisors.

On April 18, 1927, defendant William Kasal made a written lease of some real estate upon which was located a barn to defendant Frank Kasal. The lease, which was recorded, contained a provision that the premises were leased "for the purpose of conducting public dances." The lessee's application to the local town board of supervisors for a permit to conduct public dances in the barn was denied on June 2, 1927. On October 14, 1927, a dance was held in the barn, to which the public had access, and this dance resulted in the prosecution of defendants.

L. 1923, p. 148, c. 139, 2 Mason Minn. St. §§ 10161-10174, provides that:

"A public dance * * * shall be taken to mean any dance wherein the public may participate by payment, either, directly or indirectly, of an admission fee or price for dancing * * * and shall include any manner of holding a dance which may be participated in by the public through the payment of money, directly or indirectly." [§ 10161]

In the instant case no charge was made for the express purpose of granting admittance. The public was apparently permitted to enter, dance, and leave without charge. The dancing was on the second floor. But on the ground floor there was a check room where the people could check their hats and wraps for 15 cents per person. On this floor was also a lunch-counter about 40 feet long where the service included the following: Wiener sandwich and bottle of pop, 20 cents; coffee, 10 cents; coffee and sandwich, 20 cents; some sandwiches and pop, 25 cents; supper per plate, 35 cents. This consisted of sandwich, two pieces of cake and coffee or pop. Candy and gum were sold at standard prices.

This particular dance was attended by about 250 people, and it was probably the fourth dance since July 1, 1927.

It is the claim of appellants that the statute has no application where there is no compulsory payment in order to participate in the dance. With this we cannot agree. It is said that those present were privileged to dance without patronizing the check room or the lunch-counter. We construe the statute as meaning that if the net result of the entertainment is a successful effort to obtain money, which obviously would not be obtained in the absence of the dancing, it is a violation of the law.

In such a case as this the real question is whether the charge for lunches and checking was a subterfuge to evade the law. In determining this question the reasonableness of the charges is important. If the service rendered was the sole consideration for the money paid the proprietor was not guilty. If the privilege of dancing was a part of the consideration he was guilty. This element was properly submitted to the jury, and the evidence is sufficient to sustain the verdict to the extent of saying that a subterfuge was invoked and a public dance was held.

But who held the dance? The evidence shows that the owner, William Kasal, the lessor in the lease mentioned, was present at the dance and played in the orchestra furnishing the dancing music. His ownership and this participation is sufficient to connect him with the offense. What became of the lease after the lessee was denied a permit? The record does not inform us. Frank Kasal, the lessee, was not at the dance, i. e. the record does not show that he was. Nor does it show that he had anything to do with it, except that he got the lease and attempted to get permission to operate a public dance within the law. There can be no presumption of his guilt. In fact his acts as shown by the record would indicate an intention to comply with the law. His absence would rather indicate that, having been denied a permit, he had abandoned his plans. The presumption is that he obeyed the law. His guilt must be established beyond a reasonable doubt. We think this has not been done, and as to him the conviction cannot stand.

When the state rested each defendant separately moved for a dismissal. At the conclusion of the trial each defendant separate-

ly moved for a directed verdict. After conviction defendants made a joint motion for a new trial. It has been suggested that a motion for a new trial which cannot be allowed as to all the parties therein must be denied. This court has so held in civil actions. Miller v. Adamson, 45 Minn. 99, 47 N. W. 452; McKasy v. Huber, 65 Minn. 9, 67 N. W. 650; Baer v. Kloos, 81 Minn. 218, 83 N. W. 980; Sticha v. Benzick, 156 Minn. 52, 194 N. W. 752. But this holding has been criticized. Lyngen v. Tessum, 169 Minn. 304, 211 N. W. 314. It is technical and harsh and not in harmony with the general spirit of the inclinations of this court. The rule does not apply where the motion is joint and several. Bathke v. Krassin, 78 Minn. 272, 80 N. W. 950. But whether we should depart from this holding as intimated in Lyngen v. Tessum, 169 Minn. 304, 211 N. W. 314, we need not now consider. We have never extended the rule to criminal cases. Some courts have. 16 C. J. p. 938, § 2304. Dutcher v. State, 16 Neb. 30, 19 N. W. 612. But in a criminal case in this court a defendant need not make any assignment of error. He is free to urge anything that the record will support. We have freely done away with technicalities which were obstacles to the state, and with equal freedom we anxiously lay aside technical, artificial, and harsh rules that tend to result in the conviction of an innocent person. Where rules of procedure may perchance have such consequences they should be abandoned, and when discovered in season should never be adopted. If this rule, prevailing in some states, should be adopted by us it would mean that an innocent person would be punished unless given clemency by the pardon board. We must follow reason always. It must rule. We therefore decline to adopt this rule in criminal cases and hold that the rule more in consonance with reason, modern practice, and natural justice is that a joint motion for a new trial, in a criminal case, will be sustained as to any defendant concerning whom the grounds are sufficient.

Reversed as to defendant Frank Kasal and affirmed as to defendant William Kasal.