## STATE v. CARL BENNETT.[1]

January 31, 1930.

No. 27,767.

 

*McDonough & Diehl,* for appellant.

*G. A. Youngquist,* Attorney General, *C. D. O'Brien, Jr.* County Attorney, and *Charles L. Hayes,* Assistant County Attorney, for the state.

HILTON, J.

Defendant was charged by a complaint in municipal court with the offense of conducting a public dance between the hours of one and six o'clock a. m. on Thursday, June 27, 1929, in the township of White Bear, Ramsey county. He appeals from a judgment of conviction.

L. 1925, p. 383, c. 302 (2 Mason, 1927, § 10171) provides in part:

"No public dance shall be held or conducted between the hours of one and six o'clock a. m. of any day; provided that no public dance shall be held or conducted on Sunday during the hours preceding twelve o'clock noon thereof."

L. 1923, p. 148, c. 139, § 1 (G. S. 1923 [2 Mason, 1927] § 10161) defines "public dance" as follows:

[1]Reported in 229 N. W. 88.

"A public dance, as the term is used in this act, shall be taken to mean any dance wherein the public may participate by payment, either directly or indirectly, of an admission fee or price for dancing or a fee for a membership in a club, and shall include any manner of holding a dance which may be participated in by the public through the payment of money, directly or indirectly."

Defendant was operating a public restaurant (of the kind generally known as "chicken shacks" or "chicken shops") in a 17-room building formerly used for a boarding house. The upstairs thereof was in part lived in by defendant, and during a rush of business meals were served in some of the upstairs rooms. On the first floor there were five rooms and a kitchen. These rooms were used for serving meals. In one of them a new hardwood floor had been installed, particularly suitable for dancing and especially used therefor. It was prepared for the use of defendant's patrons. In this room there was a piano and a phonograph, the latter being operated by means of a nickel placed in a slot. In that room there was always one table and sometimes two, suitable for the serving of meals. When the room was used for dancing one of the tables could be and frequently was moved out of the room, through a wide opening, into another room. The phonograph was rented by defendant. He was required to pay a fixed amount weekly therefor and to make up the difference between the money placed in it and the amount of the rental. It was generally operated by patrons of the restaurant. At times defendant himself would deposit a coin therein to obtain music. Most of the records used in the phonograph produced dance music; there were some song records. The charge for a chicken sandwich, which included salad and potatoes, was 65 cents and 10 cents extra for a cup of coffee. There was a variance in the prices charged for meals in such places as defendant's in the same locality, some charging less, others charging more than defendant. In some of the places but five cents was charged for coffee. Defendant had a restaurant license but did not have a dance hall license.

Two witnesses, other than the deputy sheriff who made the arrest, testified that on the date charged they were in defendant's restau-

rant and purchased meals; that they with four other couples danced in the dance floor room after one o'clock on the morning of that day. Members of the party obtained music for dancing by depositing coins in the phonograph. Defendant made no objection to his customers dancing after one o'clock a. m. Shortly after the day referred to the sheriff ordered a cessation of dancing in defendant's place and other like places during the prohibited hours. Defendant testified that after the ban was placed thereon his business dropped off for a while.

Although people were not prevented from coming into the place for dancing only, they were certainly not encouraged so to do. The opportunity offered for dancing was one of the attractions of the place and increased its revenue, otherwise there would be no object in the expense incurred. The meals served were not the sole consideration for which money was paid. The charge paid included all the entertainment—food, shelter, and dancing. The people patronizing the place indirectly paid for the privilege of dancing, whether exercised or not. When a patron desiring to dance placed a nickel in the phonograph he. paid five cents for his dance. The evils aimed at by the law are well known. Its salutary purpose cannot be circumvented by the subterfuge here adopted or by others of a similar nature. A direct charge of an admission fee would not make the situation any worse.

The purpose of the legislature in enacting the statute hereinbefore quoted is clearly outlined in State v. Kasal, 176 Minn. 86, 88, 222 N. W. 575, in which it was said:

"It is the claim of appellants that the statute has no application where there is no compulsory payment in order to participate in the dance. With this we cannot agree. It is said that those present were privileged to dance without patronizing the check room or the lunch-counter. We construe the statute as meaning that if the net result of the entertainment is a successful effort to obtain money, which obviously would not be obtained in the absence of the dancing, it is a violation of the law. In such a case as this the real question is whether the charge for lunches and checking was a subterfuge to

evade the law. * * * This element was properly submitted to the jury, and the evidence is sufficient to sustain the verdict to the extent of saying that a subterfuge was invoked and a public dance was held."

The facts in this case bring it within the authority of the Kasal case, and there was ample evidence to sustain the conclusion of the trial court that the defendant had been proved guilty of the offense charged. It is contended by defendant that it was not the purpose of the legislature to have the statute cover occurrences such as are here involved. If that be true, the remedy is by legislative and not judicial action.

Judgment affirmed.

WILSON, C. J. (dissenting).

I think the construction extremely technical. The depositing of a nickel is trivial when considered from a monetary standpoint. Had defendant required his patrons to go through the manual process of changing the records he apparently would have been within the law. It seems clear that the legislature never intended to strike at such innocent conduct as disclosed by the record, which is apparently only incidental.