WILLIAM S. MOWRY v. SARAH E. McQUEEN and Others.[1]

*July 5, 1900.*

Nos. 12,124—(163).

**Wisconsin Statute—Lien of Creditor upon Real Estate of Decedent.**

Under the laws of the state of Wisconsin, the creditors of a deceased person acquire a lien upon real property, of which the deceased was seised at the time of his death, for the payment of their claims in due course of administration, which lien is subordinate to the dower rights of a widow, but is prior to the interests of the heirs at law. This lien continues until barred by a statute of limitations, or, in the absence of a statute, by the rules of the common law, or by laches on the part of the creditors.

**Pleading—Statute of Limitations in Another State.**

Statutes of limitation are matters of procedure, pleading, and proof; and, in the absence of an allegation to the contrary in a pleading, we may presume that the statute of a sister state on this subject is the same as our own.

**Complaint—Collection of Claim by Creditor.**

*Held* that, from the allegations in the complaint herein respecting the

[1] Reported in 83 N. W. 348.

80 M.—25

commencement of an action in an equity court in the state of South Carolina in the year 1867, it does not appear that the plaintiff, as a creditor of a person who had recently deceased, a resident of that state, had been enjoined, prohibited, or restrained from proceeding to enforce the collection of his claim out of real property belonging to the estate, and situated in the state of Wisconsin.

## Complaint Defective upon Demurrer.

*Held,* that as against several of the defendants, who demurred, the complaint herein failed to state facts sufficient to constitute a cause of action, because it clearly appears therefrom that the claim asserted is barred by the statute of limitations, or by the rules of the common law, or by the laches of plaintiff. In either case it is nonenforceable.

Appeal by plaintiff from an order of the district court for Ramsey county, Otis, J., sustaining demurrers to the complaint. Affirmed.

*S. & O. Kipp* and *J. H. Hudson,* for appellant.

*Towne & Merchant, George P. Knowles, Frederick G. Ingersoll,* and *A. G. Briggs,* for respondents.

COLLINS, J.

In some respects this action is unique. It is another chapter in the matter of the estate of John McQueen, who died intestate in 1867, a resident of the state of South Carolina, leaving a widow and three children; the latter being minors. See McQueen v. Burhans, 77 Minn. 382, 80 N. W. 201.

The complaint in this case is very lengthy, and, with the exhibits, comprises about 135 pages of the paper book. We shall not undertake to state its contents very fully, believing that such a statement would be of no value to the profession. It appears therefrom that Mr. McQueen died insolvent, leaving some incumbered real estate and some personal property in the state of his residence. He also died seised of the Wisconsin lands which were the subject of the litigation before mentioned. The defendants here are the widow and sons of the deceased (the sons having long ago attained majority), Burhans, Nichols, Jefferson, and Kasson (the four persons last mentioned being made defendants in the former case), and, in addition thereto, Messrs. Ingersoll and Briggs, who were attorneys for the plaintiffs in that action. The McQueens are residents of the state of Alabama; Mrs. McQueen, with her children, having

moved from South Carolina in the year 1870. Burhans and Nichols are residents of the state of Wisconsin; the other defendants reside in Minnesota. The plaintiff, Mowry, is the sole surviving partner of the late firm of Mowry & Co., which firm was a creditor of the deceased at the time of his death; and he sues, as such surviving partner, in his own behalf, and for such other creditors as choose to appear and take part in the proceedings.

This action was commenced in June, 1899, and the present appeal is from an order sustaining separate demurrers of all of the defendants except Jefferson and Kasson. These demurrers were sustained in the court below on the ground that the complaint failed to state a cause of action as to the demurring defendants. The purpose of the action, as we gather from the complaint, is to subject the real estate remaining in the hands of Jefferson and Kasson, and the fund which they have derived from a sale of a part thereof, and that part of the said fund which it is claimed is represented by the judgment in the United States court against said Jefferson and Kasson and in favor of the defendant Burhans, to the payment of the balance of a claim which was established, allowed, and adjudged in favor of said firm of Mowry & Co. against the estate of said deceased in a court of equity in the state of South Carolina in the year 1869. This action was purely equitable, and the right to recover upon which the plaintiff bases the same is not very clearly set forth in the complaint; but it seems to be predicated upon an alleged fraud and conspiracy on the part of the widow and heirs (the former being administratrix of the estate) in preventing the sale of the Wisconsin lands for the benefit of the creditors that their claims might be paid, and in thereafter making a sale of said lands as their own to defendant Jefferson; the sale being that considered in McQueen v. Burhans, supra.

It is alleged that letters of administration were issued to Mrs. McQueen in October, 1867, by the court of ordinary in South Carolina, she giving a bond in the sum of $10,000, with sufficient sureties; the conditions being that she should make a true and personal inventory of all goods, chattels, and credits of the deceased which should come into her hands, and to administer the estate in due form according to law, making a just and true account of her acts

and doings, and to deliver and pay over to such persons as should show themselves entitled to the same under the law all balances which might remain in her hands upon administration. The indebtedness exceeded $40,000, and the assets and personal property did not exceed $25,000; the Wisconsin lands being inventoried and returned as unimproved and of no value.

These proceedings were in the court of ordinary, as before stated (a court which, we presume, has original jurisdiction in probate matters); and within three months after such appointment the widow filed a bill of complaint in a court of equity in said state of South Carolina against the heirs, against Mowry, the present plaintiff, and other creditors, in which she set forth some of the above-stated facts, and also alleged that there were a large number of debts outstanding; that the creditors were pressing their demands, and threatening suits against her; that there was danger of the whole estate being insufficient to meet the demands against it; that she was desirous of accounting before the court of equity for her acts and doings; that the assets of the estate, both real and personal, should be subject to the direction and control of that court; that the children were under the age of fourteen years, and entirely dependent upon her for their maintenance and support; that she was remediless under the strict rulings of the common law, and could not have adequate relief except in a court of equity. Her petition in this bill was that a writ might be issued under the seal of said court, directed to certain commissioners, for the purpose of admeasuring and setting apart her dower right in and to the lands belonging to said estate. She further petitioned that all of the creditors be enjoined and restrained from pursuing their remedy at law, and that they be required to prove and establish their several demands before commissioners appointed for that purpose; that after the assignment of her said dower said lands be sold; and that pending the proceedings a reasonable allowance might be made by the court for the support of herself and her said minor children. February 12, 1868, an order was made by the court of equity directing the sale of the real estate located in the district in which the parties lived in South Carolina; that the widow, as administratrix, account to the court for her actions and doings; that all of the cred-

itors prove their demands before the commissioners on or before October 1, 1868,

"And, failing to do so, that they be forever barred from proceeding either at law or in equity against the complainant as administratrix as aforesaid; and that the said Mowry & Co., and all others claiming to be such creditors, be restrained and enjoined from proceeding against the complainant elsewhere or otherwise."

Mowry & Co. presented their claim, and it was allowed and adjudged to be due as of October 1, 1868. All the property, both real and personal, of the deceased situated in South Carolina was converted into money from time to time between October 2, 1867, and March 8, 1878. A part of the claim of Mowry & Co. as allowed was paid, and a part never has been paid.

It is further alleged in the complaint that in June, 1884, the administratrix was directed by the court of equity in South Carolina to proceed at once to a sale of the property belonging to the estate situated in the state of Wisconsin, and after deducting such sum as she might be entitled to, in lieu of dower, under the law of the state of Wisconsin, that she pay the balance over to the clerk of that court, to be paid out and disposed of in accordance with the orders previously made in that pending equitable action. It was also alleged that on October 27, 1885, upon a petition signed by Mrs. McQueen, by her agent, an order was made in the county court of Douglas county, in the state of Wisconsin, in which county the lands were situated, directing her to sell or incumber said real property in order to pay debts of the deceased. It appears clearly that no sale was made under this order, and that in October, 1889, a sale was made of said property to defendant Jefferson, and a conveyance of date October 13, 1889, executed and delivered by the widow and heirs at law of said deceased, in which Jefferson was the grantee; this deed being the one involved in the former action.

The laws of Wisconsin, or a part thereof, pertaining to the descent of real property, are set out in the complaint. By virtue of these laws it appears that the creditors of the deceased acquired a lien upon the real estate situated in that state for the payment of their claims, which lien had priority over the interests of the heirs, but was subordinate to the dower rights of the widow. The cred-

itors had no other claim or right which could be asserted against these lands, and their liens could only be enforced in one of two ways: First, through ancillary administration proceedings, and by a sale in due course of administration; and, second, through an application made by the foreign administrator to sell the lands, convert them into money, and distribute the same through the courts of South Carolina, which then and there had personal jurisdiction over such administratrix. The lien which we have mentioned continued until barred by the statute of limitations in the state of Wisconsin, if there was such a statute; but, in any event, as was said by the court below, failure, without let or hindrance, to enforce it within a reasonable time terminated the lien and the right to pursue it. What is a reasonable time may, even if there be no statute, be determined by reference to analogous cases in respect to which the limitation is fixed by express statute. O'Mulcahey v. Gragg, 45 Minn. 112, 47 N. W. 543. Statutes of limitations are matters of procedure, pleading, and proof; and, in the absence of any allegation to the contrary, we may assume, in an action brought in this state, that they are the same in Wisconsin as in Minnesota, on this particular subject.

The allowance of the claim of Mowry & Co. in the court of equity in the year 1868 was an adjudication of the amount due to them, and had all of the force and effect of an ordinary judgment. Assuming that the statute of limitations in the state of Wisconsin is the same as our own, in respect to judgments, the statute ran as against the judgment and the lien in the year 1888. An application to sell the real estate in Wisconsin after October 1 of that year would, under the decision of this court in State v. Probate Court, 40 Minn. 296, 41 N. W. 1033, have been refused. Again, under the provisions of G. S. 1894, § 4514, the plaintiff's claim was barred more than twenty-five years ago. The plaintiff's lien upon the Wisconsin land was certainly extinguished by lapse of time long before the sale to Jefferson, irrespective of a statute; for, should it be held that it was not so barred by statute, reference must be had to the rulings of the common law, and under such rulings plaintiff's claim was barred at the end of twenty years after McQueen's death, or at least at the end of twenty years from the date upon which the

claim of Mowry & Co. was proven, established, and allowed in the court of equity in South Carolina, for it then became the judgment of the court. And, as before stated, it could become stale and non-enforceable through laches.

The plaintiff seems to attempt to escape from this conclusion by setting forth the facts in regard to the suit in equity, and that by means of this suit he was restrained and prohibited from asserting his lien upon the Wisconsin land. The position is that by reason of this suit all creditors were not only excused from taking any steps to enforce their liens, but were forbidden so to do. We do not so construe the order relied on. It is to be construed with reference to the allegations in the bill. It certainly had no extraterritorial force. It would not have been respected in the state of Wisconsin, had the plaintiff attempted to enforce his lien there in ancillary proceedings, but would have been wholly disregarded. We are confident that it would not have been construed in the state of South Carolina as a prohibition against such proceedings in the proper tribunal in Wisconsin. But, if we give to the order the effect which plaintiff claims for it, he still has a lien upon the lands in the state of Wisconsin, which may be enforced there, and which affords him a plain and adequate and complete remedy at law. He need not and cannot resort to an equitable action for the enforcement of his rights. Nor has the alleged fraud and conspiracy on the part of the McQueens prevented him from enforcing his lien by a direct proceeding in administration of the estate in the state of Wisconsin.

It is alleged that the plaintiff has but recently learned of this conspiracy and fraudulent agreement between the widow and the heirs in the consummation of which she declined to make the sale as directed by the Wisconsin court, and then, with her co-conspirators, made a sale as of their own property. But in 1867 he was informed of the ownership of these lands, upon the filing of the inventory in the court of ordinary in the state of South Carolina, and of the rights which the law gave him to enforce his liens against the same. There was absolutely nothing to prevent his proceeding against the lands at any time, and, having failed to do so for more than thirty years, he is certainly without remedy in a proceeding of

this character. Nor did the sale by the McQueens to Jefferson, and by him, later, to Kasson and others, affect the plaintiff's rights, if he had any when the sale was made. Jefferson and his vendees took their conveyances subject to creditors' liens subsisting on the lands conveyed, if there were any. And it is wholly immaterial that, as alleged in the complaint, Jefferson was grossly imposed upon and deceived by the McQueens when he purchased. In any aspect of the complaint, the plaintiff's claim is stale and inequitable.

In addition to what has been said, which applies generally to all of the demurring defendants, it may be stated that what Burhans' compensation was to be for selling these lands, that he earned it, and upon their failure to pay secured a judgment against Jefferson and Kasson for the amount, is a matter of no concern to the creditors of the deceased, John McQueen. It affects the parties to that action alone. It is not claimed that Jefferson and Kasson are insolvent and unable to respond to any demand which may be made upon them by the plaintiff, and for that reason that he has an equitable claim upon the judgment. That Burhans obtained a judgment for the compensation agreed upon for his services as a real-estate broker, which Jefferson and Kasson may have to pay, is of no avail to the latter as a defense in this action; and there is absolutely no ground, legal or equitable, on which plaintiff can assert a right to the proceeds of such judgment as against Nichols, the successor in interest of the original judgment creditor, even if he has an enforceable right as against the lands, and as against the money which has been derived from partial sales thereof by Jefferson and Kasson. We need not specially refer to the claim made against defendants Ingersoll and Briggs, who were plaintiff's attorneys in the former suit. Surely no cause of action is stated against either, in any aspect of the cause.

Order affirmed.