Milton L. Coleman, as Committee of the Person and Property of Irma Steinbach Cohn, an Incompetent Person, Plaintiff, *v.* National Surety Corporation, Defendant.

First Department, April 12, 1935.

*Isaac N. Jacobson* of counsel [*Jacobson, O'Neill & Baum,* attorneys], for the plaintiff.

*LeRoy B. Iserman* of counsel [*Wendell P. Barker* with him on the brief, attorney], for the defendant.

UNTERMYER, J.   This controversy is submitted upon an agreed statement of facts.

On September 21, 1922, by order of the Supreme Court, New York county, Arthur C. Steinbach was appointed committee of the person and property of Irma Steinbach Cohn, an incompetent, and was ordered to file a surety company bond before qualifying. Steinbach qualified as committee and filed a bond in the sum of $10,000, executed by himself as principal and National Surety Company as surety, conditioned that Steinbach " will in all things faithfully discharge the trust reposed in him, and obey all lawful directions of any Court or officer of competent jurisdiction touching the trust and will in all respects render a just and true account of all money and other property received by him and of the application thereof."   Steinbach continued to act as committee until December 2, 1932.   In October, 1932, a son of the incompetent petitioned the Supreme Court for the removal of Steinbach as committee, that Steinbach be directed to account and that Milton L. Coleman, the plaintiff, be appointed as substituted committee. The basis for that application was that Steinbach was no longer qualified to act as committee because he had become a legal resident of the State of New Jersey.

The petition was granted and by order of the Supreme Court entered on December 2, 1932, Steinbach was removed as committee and was required to file an account.   Coleman, the plaintiff, was appointed as committee in his place.   The order provided that a copy of Steinbach's account be served upon the attorneys for plaintiff and upon the National Surety Company, the surety on his bond.   Steinbach filed a final account of his proceedings as committee on January 4, 1932, covering his ten years of service. Coleman, the new committee and the plaintiff herein, filed written objections to the account on January 7, 1933, demanding that Steinbach be surcharged with certain funds constituting the corpus of the estate, which he had removed from the State of New York and deposited in the Seacoast Trust Company in New Jersey, which had been closed and placed in liquidation by the Banking Department of that State in December, 1931.   The basis of the objection was that Steinbach had no power to remove the funds of the estate from the State of New York.

On March 30, 1933, the court entered an order appointing a referee to take and state Steinbach's account, hear objections thereto and report to the court.   The referee duly held hearings upon the account and the objections thereto and on July 14, 1933, filed his report, in which he recommended that Steinbach be surcharged with the funds which he had removed from this State and

deposited in the Seacoast Trust Company, the balance of which amounted to $8,656.04 and interest. The National Surety Company had notice of the proceedings for the removal of Steinbach as committee and for his accounting. It was represented by counsel at the hearings before the referee when it was sought to surcharge Steinbach for losses alleged to have been sustained by the estate of the incompetent. Consequently it had actual notice that a loss was claimed by the plaintiff to have been sustained by the estate by reason of Steinbach's acts.

The plaintiff duly moved for the confirmation of the referee's report. On November 9, 1933, the Supreme Court entered an order, whereby the report of the referee was " in all respects confirmed and approved " and directing judgment for costs against Steinbach for $1,536.80. Written demand made by the plaintiff on Steinbach to turn over the funds deposited by him in the Seacoast Trust Company and for the payment of the costs was unavailing, although Steinbach offered to assign to the plaintiff the funds in the committee's account in the Seacoast Trust Company. The order of November 9, 1933, although it confirmed and approved the referee's report, does not purport to surcharge Steinbach with the sum on deposit with the Seacoast Trust Company of New Jersey, but does surcharge him with interest on these funds. The order ignores the deposits in the Seacoast Trust Company and, after charging him with sums received (together with the surcharge for interest) and crediting him with proper payments, recites the existence of a balance amounting to $10,715.96, which Steinbach " is directed to pay and turn over to Milton L. Coleman, as substituted committee."

The decision of the present controversy depends on whether the defendant National Surety Corporation is liable upon this state of facts, under an assumption certificate which it filed in the office of the clerk of New York county on June 22, 1933. The National Surety Company had become involved in financial difficulties, in consequence of which the Superintendent of Insurance of the State of New York took possession of its property for the purpose of rehabilitation on April 29, 1933. As a part of the plan of rehabilitation there was organized on that date the defendant National Surety Corporation all of whose stock was, and still is held by the Superintendent of Insurance as rehabilitator of the National Surety Company. As a part of that plan also, on April 29, 1933, the National Surety Corporation entered into a contract with the National Surety Company pursuant to which the assumption certificate was subsequently executed. By the assumption certificate the National Surety Corporation " submits itself to the

jurisdiction of the above-mentioned court, and assumes liability for and agrees to pay all losses arising from, or caused by, acts committed on and after the 1st day of May, 1933, under any and all fiduciary court bonds issued by National Surety Company and filed in said court covering risks involving estates held or administered by persons acting in a fiduciary or trust capacity."

The contract of April 29, 1933, pursuant to which this assumption certificate was executed, contains also a provision, not contained in the assumption certificate, exempting the National Surety Corporation from liability " for loss in any other case or under any other bond or contract of indemnity or insurance or co-suretyship in connection with which any notice was or has been received by or for the old company [National Surety Company] prior to May 1, 1933, that a loss has occurred, may occur or may have occurred." The defendant contends that the plaintiff in no event is entitled to recover because the National Surety Company had notice in the accounting proceedings prior to May 1, 1933, of the deposits by Steinbach in the Seacoast Trust Company and that the plaintiff intended to surcharge Steinbach's account by reason of the loss sustained thereby. We are of opinion, however, that the provisions concerning exemption where notice of loss had been received relate only to bonds or contracts of " indemnity or insurance or co-suretyship " and were not intended to include fiduciary court bonds for which special provision is elsewhere made in the contract of April 29, 1933. Probably for that reason no provision was included in the assumption certificate exempting the National Surety Corporation from liability where notice of loss had been received by the National Surety Company prior to May 1, 1933.

The question then is whether the liability which is asserted against the defendant National Surety Corporation is for " losses arising from, or caused by, acts committed on and after the 1st day of May, 1933." If the order of November 9, 1933, had surcharged Steinbach's account for the illegal deposit of the funds of the estate in the Seacoast Trust Company there would be no doubt that under our decision in *Matter of Blue Ridge Coal Corp.* v. *National Surety Co.* (241 App. Div. 863), the defendant would not be liable. It would then be evident that the acts which constituted the basis of the surcharge would have occurred before May 1, 1933. The plaintiff contends, however, that a different result follows because the order of November 9, 1933, does not surcharge Steinbach's account, but merely charges him with property received and credits him with proper expenditures. It is, therefore, asserted that the loss for which the defendant should be held liable consists of the " act " of Steinbach in failing to comply with the direction of the court to

pay over to his successor the balance remaining and that this " act " was committed after May 1, 1933.

It is not altogether true that the order of November ninth has this effect, for it expressly confirms the report of the referee which recommended that Steinbach " be surcharged with the sum of $8,656.04, the amount of money now on deposit with the said Seacoast Trust Company " with interest. That report was in exact accordance with the plaintiff's objections to Steinbach's account, in which he demanded that Steinbach " be surcharged with the full amount " of the Seacoast Trust Company account and with the interest thereon. Under these circumstances the order of November 9, 1933, which confirmed the referee's report and which furthermore expressly " surcharged " Steinbach with interest on these funds, should be construed as surcharging him also for the loss resulting from the deposit in the Seacoast Trust Company. (Cf. *Rudd* v. *Cornell*, 171 N. Y. 114.) In any event, by the nature of the objections which the plaintiff filed to Steinbach's account followed by the surcharge recommended in the report of the referee which the plaintiff moved to confirm, the plaintiff elected to surcharge Steinbach for the loss (*Terry* v. *Munger*, 121 N. Y. 161; *Conrow* v. *Little*, 115 id. 387; *Haydock* v. *Coope*, 53 id. 68; *Stuyvesant* v. *Davis*, 9 Paige, 427) and is now estopped from contending otherwise. The plaintiff induced that ruling when the result no doubt seemed to his advantage. We ought not to change it at his instance now when the result is to his detriment. (*Davis* v. *Wakelee*, 156 U. S. 680; *Railway Co.* v. *McCarthy*, 96 id. 258; *Miller* v. *President of Junction Canal Co.*, 41 N. Y. 98; *Suarez* v. *Manhattan R. Co.*, 60 Hun, 584.) The plaintiff could not assert that the funds deposited in the Seacoast Trust Company continued to be the funds of the estate for the loss of which Steinbach should be surcharged and then by disregarding that transaction, maintain that the funds so deposited were not the property of the estate but that its funds were still constructively in Steinbach's possession.

But even disregarding any question of election or estoppel, we are of opinion that the loss for which the defendant is sought to be held liable was a loss " arising from, or caused by, acts committed " before May 1, 1933. We must distinguish here between " losses " and the " acts " by which they are occasioned. The defendant did not agree to pay except for losses sustained by the estate on or after May 1, 1933. It did not agree to pay even for such losses if they were caused by acts committed previous to May 1, 1933. The plaintiff's contention that in the present case both the " act " and the " loss " consisted in Steinbach's failure to pay in accordance with the order of November ninth, disregards the language and

intent of the assumption certificate, which plainly discriminates between the two. Nor is the distinction between a charge and a surcharge decisive here, for where illegal transactions resulting in a loss have occurred both will necessarily result in a direction to pay the balance ascertained to be due upon the accounting. In the present case there would have been no loss after May 1, 1933, except for the illegal act committed long before. Whether produced by a charge or by a surcharge, that loss is attributable to the deposit of the funds in the Seacoast Trust Company, resulting in the depletion of the estate and the inability of the committee to turn over the balance constructively in his possession. This becomes evident if we inquire whether the National Surety *Company* would be liable for the loss which resulted from the " act " of Steinbach in depositing the funds of the estate in the Seacoast Trust Company and from Steinbach's failure to pay in accordance with the order of November 9, 1933. The answer is that it would be liable, even though the loss to the estate was not liquidated until after Steinbach had been removed as the committee. (*National City Bank* v. *National Security Co.*, 58 F. [2d] 7; *Phœnix Nat. Bank & Trust Co.* v. *Ætna Casualty & Surety Co.*, 44 id. 511.) The same reasons that would render the National Surety Company liable for that loss serve to relieve the National Surety Corporation from liability.

Judgment should be directed for the defendant, with costs.

MARTIN, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Judgment directed for the defendant, with costs. Settle order on notice.