## NATIONAL SURETY CORPORATION OF NEW YORK v. ELLISON.

### No. 10730.

Circuit Court of Appeals, Eighth Circuit.

March 6, 1937.

M. J. Doherty, of St. Paul, Minn. (Doherty, Rumble & Butler, of St. Paul, Minn., on the brief), for appellant.

O. A. Lende, of Granite Falls, Minn. (George C. Stiles, of Minneapolis, Minn., on the brief), for appellee.

Beföre GARDNER, THOMAS, and FARIS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment of the District Court of Minnesota entered in favor of the appellee, plaintiff below, against the appellant, defendant below, upon an order for judgment upon the pleadings. Both parties having moved for judgment, after issues were joined, plaintiff's motion was sustained and defendant's denied. The rulings of the court upon the motions and the entry of judgment are assigned as errors.

The action arose out of the administration of the estate of Andrew J. Olin, deceased, .in the probate court of Minnesota.

The facts admitted in the pleadings disclose that on September 11, 1923, Flora Olin was appointed administratrix of said estate and filed a bond in the penal sum of $10,000 executed by the National Surety Company, as surety. The condition of the bond is that the administratrix "shall well and faithfully discharge all the duties of his trust as representative of said estate according to law."

In April, 1935, Flora Olin petitioned the probate court for an order allowing her final account and discharging and releasing her and her sureties on her bond. The appellee having been appointed and qualified as administrator de bonis non of the estate appeared in opposition to the prayer of her petition. A hearing upon the issues thus joined was had before the probate court, beginning on the 22d day of April, 1935, and on July 12, 1935, the court entered his findings of fact and conclusions of law, and order. The probate court, in so far as material here, found:

That the deceased left heirs surviving him; that creditors filed claims in the total sum of $28,143.46; "all of which were allowed by this court April 24, 1924, and May 16, 1924; that no part of said claims have been paid;" that he left real estate and personal property; that the value of the real estate was $18,790.61 over and above the liens and incumbrances thereon; that the administratrix did not sell any of the real estate to pay the claims of creditors; and that a reasonable time in which she should have applied for a license and sold the real estate expired May 16, 1934.

The probate court further found that the administratrix purchased a certain note and mortgage, referred to as the Lovesee note, with her own money, which note was owned by the estate; that she made a profit on the transaction in the amount of $5,230 for which she failed to account as a result of which the estate sustained a loss of said amount. In this connection, the court found specifically:

"Said Flora Olin, as such administratrix, has in her possession the sum of $5,230 of the funds belonging to the estate of said Andrew J. Olin, which sum is not accounted for by her, as such administratrix."

As conclusions of law, the probate court found that the account of the administratrix is chargeable (1) with $18,790.61 damages sustained by the estate by reason of her neglect and failure to sell the real estate, and (2) with the sum of $5,230, being the profit realized by her on the Lovesee note and mortgage.

And the probate court then:

"Ordered:

"That the account of said Flora Olin, as administratrix of the Estate of Andrew J. Olin, be and is hereby surcharged in and for the sum of $18,790.61 as the loss sustained by reason of her failure to take possession of and sell the real estate of which Andrew J. Olin died seized; and that her account be surcharged with $5,230 as the difference between the amount paid by her for the said so-called Lovesee mortgage and the amounts received by her thereon. * * *

"It is further—

"Ordered that Perham M. Ellison, the duly appointed administrator de bonis non of the estate of Andrew J. Olin succeeding said Flora Olin, proceed immediately to collect said sum from the said Flora Olin, or her surety, and to that end he is hereby authorized and directed to bring all necessary actions to recover the amounts herein set forth from the said Flora Olin or her surety."

On April 29, 1933, the National Surety Company, surety on the bond of the administratrix, by the superintendent of insurance of the state of New York, as rehabilitator, entered into an agreement with the appellant, National Surety Corporation, in which the parties are referred to as the "Old Company" and the "New Corporation" respectively; which agreement, after reciting that by an order of the Supreme Court the superintendent of insurance had taken over the old company for rehabilitation, provided:

"Whereas, the New Corporation has been organized under the laws of the State of New York for that purpose, with a capital of $1,000,000 and a surplus of $3,000,000 the same having been paid out of the assets of the Old Company in exchange for the entire capital stock of the New Corporation;

"Now, therefore, * * * it is agreed * * *

"II. The New Corporation, subject to the exclusions, exceptions, and conditions hereinafter contained, hereby assumes liabilities for and agrees to pay. * * *

"(c) All losses occurring on and after the 1st day of May, 1933, and all losses as to which no notice was received by the

Old Company prior to Midnight of April 30, 1933, New York Standard Time, under any and all other bonds * * * issued by the Old Company which may be in force and unexpired at Midnight of April 30, 1933, New York Standard Time, as hereinbefore enumerated, subject however to and limited by the exclusions and exceptions set forth and described in paragraph 'III' hereinafter contained. * * *

"(2) Surety bonds and obligations, including but not to be limited to fiduciary court bonds. * * *

"III. It is understood and agreed that the assumption of liability by the New Corporation under the provisions of paragraph 'II (c)' ante, is subject to the following exclusions * * * :

"(c) Liability for losses arising from, or caused by, acts committed prior to May 1st, 1933, under fiduciary court bonds covering risks involving estates held or administered by persons * * * acting in a fiduciary or trust capacity."

The bond in suit is a "fiduciary court bond."

Acting pursuant to the instructions of the probate court in the order set out above, the appellee brought suit upon the assumption agreement to recover the penalty of the bond in the amount of $10,000 and interest. The complaint alleged the foregoing facts, making the findings of fact and conclusions of law, and order, of the probate court and the agreement a part of the complaint. The appellant answered admitting all the allegations of the complaint except paragraphs 4, 5, 9, and 15, which were denied except as qualified in the answer. As an affirmative defense, the appellant alleged that any losses which the estate may have sustained occurred prior to May 1, 1933, and that such losses arose from and were caused by acts of the administratrix committed prior to said date and not otherwise; that Flora Olin was and is insolvent; and that if there is any liability on the part of the administratrix to the estate, it is not such in respect of which the appellant assumed liability under said contract.

The judgment was for the sum of $10,491.51 and costs.

Upon this state of the record counsel for appellant submit that two questions are presented for determination: First, Did the court err in ordering judgment on the pleadings for the plaintiff? and, Second, Did the court err in denying judgment for the defendant?

We shall follow the example set by counsel in the briefs and discuss the two questions together.

The contentions of the appellant may be summarized as follows: (1) The denials and allegations of the answer raise an issue of fact as to when the loss, if any, occurred precluding judgment in favor of plaintiff on the pleadings; (2) the losses, if any, complained of by appellee occurred prior to May 1, 1933, and were not assumed by appellant; (3) the findings of the probate court give rise to no estoppel and do not constitute an adjudication binding upon appellant.

The first contention is without merit, because the answer raises no issue of fact. The denials in the answer apply only to legal conclusions of the pleader in the complaint. It is true, of course, that a summary judgment on the pleadings is precluded where an issue of fact is raised, Consolidated Indemnity & Ins. Co. v. Alliance Cas. Co. (C.C.A.2) 68 F.(2d) 21, and that the judgment must be sustained by undisputed facts appearing in the pleadings, Klink v. Chicago, R. I. & P. Ry. Co. (C.C.A.8) 219 F. 457; Kimber v. Gunnell Gold Mining & Milling Co. (C.C.A.8) 126 F. 137. But the legal effect of a contract is a matter of law to be determined by the court. Bell Lumber Co. v. Seaman, 136 Minn. 106, 161 N.W. 383; Lucas v. Ganley Bros., Inc., 166 Minn. 7, 206 N.W. 934.

As indicated above, the answer specifically admits the allegations of the complaint, omitting from such admission paragraphs 4, 5, 9, and 15 thereof. Paragraph 4 alleges that the bond in question has at all times since its execution "and still is in full force and effect." The answer admits that the bond was in full force and effect until the effective date of the resignation of the administratrix. Since the admission covers the period when the alleged liability arose, no issue of fact arises out of the allegations of paragraph 4 of the complaint and the denials in the answer.

Paragraph 5 of the complaint alleges the organization of the appellant corporation, the execution of the assumption agreement upon which the suit is brought, and that appellant by the terms of the contract assumed all the liabilities of the National Surety Company as surety upon the bond. The answer admits all of these allegations, except that it qualifies the

charge with reference to the extent of the liability assumed, saying that it is liable for and assumed only losses accruing subsequent to May 1, 1933. The issue, therefore, involves only the interpretation of the contract and not a question of fact.

The allegations of paragraph 9 of the complaint are admitted, but it is claimed that the indebtedness of the administratrix, as found by the probate court, is not one in respect of which the appellant assumed liability. This, again, involves only the interpretation of the contract and does not present an issue of fact.

Paragraph 15 of the complaint alleges that the order of the probate court is in full force and effect and that no appeal has been taken therefrom. The order is admitted, and it is also admitted that "in so far as it (the order) determined the balance due said estate from Flora Olin * * * is in full force and effect and that no appeal has been taken therefrom." The only dispute with respect to the order of the probate court is in regard to its legal effect.

Likewise the affirmative allegations of the answer raise only questions relating to the construction of the assumption agreement and the legal effect of the order of the probate court of Minnesota. These are questions of law only and present no fact issue.

The second contention of appellant is that the losses to the estate complained of occurred prior to May 1, 1933, and were not assumed by appellant. This depends upon the meaning of paragraph III (c) of the agreement. The defendant did not assume "Liability for losses arising from, or caused by, acts committed (by the administratrix) before May 1st, 1933"; but it did assume liability for such losses "arising from, or caused by, acts committed" after May 1, 1933. In re Estate of Lustig, 240 App.Div. 405, 270 N.Y.S. 91, affirmed 265 N.Y. 517, 193 N.E. 300; Coleman v. National Surety Corporation, 244 App.Div. 244, 278 N.Y.S. 826.

Two acts of the administratrix are relied upon by the plaintiff: First, the act of failing to take possession of and sell the real estate, resulting in a loss of $18,790.16; and, second, the act of failure to account for the profit on the Lovesee note and mortgage, resulting in a loss of $5,230.

When, then, did the illegal failure of the administratrix to take possession of and sell the real estate occur? This can be determined only by discovering the duty of the administratrix in this regard under the laws of Minnesota. The statutes of Minnesota make it the duty of administrators, when necessary to pay the debts of an estate, to take charge of the real estate, apply to the probate court for a license, and to sell it. Section 8787 of said statutes provides:

"No executor or administrator shall make profit by the increase, nor suffer loss by the decrease or destruction without his fault, of any part of the personal estate * * * but where he neglects or unreasonably delays to raise money by collecting debts or selling real or personal estate, or neglects to pay over the money in his hands, and by reason thereof the value of the estate is lessened, or unnecessary costs or interest accrues, or the persons interested suffer loss, the same shall be deemed waste, and the executor or administrator shall be charged in his account with the damages sustained. He shall not purchase any claim against the estate he represents, and where he pays less than the full amount of a claim he shall charge in his account only the sum actually paid."

The effect of these statutes is that it is the duty of an administrator to take possession of real estate and sell it within a reasonable time after the debts are determined. State ex rel. Dana v. Probate Court, 40 Minn. 296, 299, 41 N.W. 1033, 1034; Mowry v. McQueen, 80 Minn. 385, 83 N.W. 348. The probate court found:

"15. That a reasonable time in which the administratrix should have applied and sold said real estate expired on May 16, 1934."

It is insisted by appellant, but without citing any controlling authority, (1) that the probate court was without power or authority to make the findings of fact and conclusions of law entered July 12, 1935; and (2) that at any rate finding "15" was unnecessary to a proper disposition of the matter before the court.

First, as to the jurisdiction of the probate court: The Supreme Court of Minnesota has held that probate courts have "all the power which any court has." Davis v. Hudson, 29 Minn. 27, 35, 11 N.W. 136, 139. "Their power to hear and determine a probate matter is conferred by the Constitution 'in the same manner and to the same extent that it gives to the district

court jurisdiction over civil cases in law and equity arising out of other matters of contract or tort.' State ex rel. Martin v. Ueland, 30 Minn. 277, 281, 15 N.W. 245, 246. * * * Probate jurisdiction would not be complete were it lacking power to determine every issue incidental to decision of the ultimate one of which it is the only court with original jurisdiction." In re Estate of Richard T. O'Connor (O'Connor v. St. Joseph's House), 191 Minn. 34, 253 N.W. 18, 21. There are no formal requisites for probate orders. In re Charles Scheffer's Estate, 58'Minn. 29, 34, 59 N.W. 956. But the court has power "to make orders, judgments, and decrees." Section 8701, subd. 2, Mason's Minnesota 1927 Statutes. And the orders of the probate court allowing claims of creditors have the effect of judgments, which are final, unless appealed from. Turner v. Fryberger, 99 Minn. 236, 108 N.W. 1118, 109 N.W. 229; Trapp v. Trapp, 182 Minn. 537, 235 N.W. 29; In re McDonald's Estate (D.C.Minn.) 42 F.(2d) 266; State v. Ramsey County Probate Court, 25 Minn. 22. Section 8705 of the statute provides:

"The decision of any issue of law or fact shall be in writing, and filed in said court within ninety days after submission."

■ We conclude that the probate court had power and authority to make the findings of fact and conclusions of law challenged by appellant.

■ Second. It cannot be said that the foregoing finding (No. 15) is not "incidental" to, and necessary to, the "ultimate one" which was to be decided by the court. It is insisted, however, that the statute fixes no time within which an administrator must apply for a license to sell real estate to pay debts, and that, therefore, the finding was unnecessary. But the Supreme Court of Minnesota said in State ex rel. Dana v. Probate Court, supra, that "unless clear and satisfactory reasons appear, such an application should not be granted after long delay, and, in analogy to the case of other judgment liens, the liens of creditors should not be enforced after the expiration of 10 years." It seems both proper and necessary, therefore, for the probate court to find, as it did in this case, that ten years is "a reasonable time in which the administratrix should have applied and sold said real estate." It being a proper finding and the court having power to make it, such finding is a part of the judgment. Balch v. Hooper, 32 Minn. 158, 20 N.W. 124.

■ The "reasonable time," therefore, within which the administratrix might have performed this particular duty included time both before and after May 1, 1933. She might have performed such duty any time after the claims of creditors were allowed on May 16, 1924, up until May 16, 1934. At what time during the whole period of ten years within which she might reasonably have acted did the act of failure resulting in damage occur? As pointed out by counsel for appellant, the probate court did not fix this point of time. But one whose duty it is to perform an act within a given period of time cannot be held in default before the end of the period. Especially is this true when as in this case the exact time within the period for doing the thing is in some degree within the discretion of the person whose duty it is to do it. The delay, neglect, and failure to act were, of course, continuous from some indefinite time prior thereto up until May 16, 1934. But it cannot be said that default occurred, that is, that the crucial act was "committed," and that the loss or damage was sustained during the period within which it was reasonable for the administratrix to take action nor before she was barred from selling the real estate. The last opportunity to act before the bar falls is the all-important moment here, just as is the case under the statute of limitations.

■ The appellant further insists that the findings of the probate court do not sustain the ultimate fact found, that is, that the loss from failure to sell the real estate occurred after May 1, 1933, because it is not found that the real estate had the value of $18,790.61 over incumbrances after that date; because failure promptly to take charge of the real estate, failure to use due care in preserving the rights of creditors, and failure to apply to the probate court for a license to sell the real estate all relate back to a time prior to May 1, 1933. This amounts only to a critical interpretation of the findings of the court, and is not warranted by their context. If the findings mean anything, they mean that as long as there was a duty to sell, the property had the value found and that the failure and neglect of the administratrix continued until May 16, 1934, before such failure and neglect resulted in loss to the estate.

The result is that under the findings and order of the probate court the loss resulting from failure to sell the real es-

tate in question arose from and was caused by an act of the administratrix committed after May 1, 1933, and that this was a loss assumed by the defendant under the assumption agreement.

In respect of the Lovesee note and mortgage, the findings of the probate court, so far as material, are that Andrew J. Olin in his lifetime pledged the note and mortgage, with other securities, to the State Bank of Franklin, as trustee, to secure certain indebtedness of Olin. The unpaid balance on the note was $17,230. On December 29, 1923, the administratrix purchased, or redeemed, the note and mortgage for $12,000 of her own money. She afterwards collected it in full thereby making a profit in the amount of $5,230 which sum under section 8787 of the Statutes of Minnesota, supra, was the property of the estate, and for which she was required to account. As pointed out above, the probate court found that the administratrix "has in her possession the sum of $5,230.00 of funds belonging to the estate of the said Andrew J. Olin, which sum is not accounted for by her," and it was ordered that her account be surcharged with that amount.

Under the law of Minnesota, this establishes a breach of duty and loss to the estate occurring after May 1, 1933, and comes within the obligation assumed by appellant. The condition of the bond was that the administratrix "shall well and faithfully discharge all the duties of his trust." The contention here is that the loss or failure to account resulted from an act committed prior to May 1, 1933, but the Supreme Court of Minnesota in considering the liability of sureties on a guardian's bond containing a similar provision, in the case of Bromen v. O'Connell, 185 Minn. 409, 241 N.W. 54, 55, 82 A.L.R. 583, said:

"Under bonds of the tenor of the one we are now considering, the sureties are held liable for the failure of their principal to account, even though the initial wrongdoing antedates the bond. The resulting duty to make good the loss continues to the end."

The court said further, in the cited case, that the statutory language of the bond is to be applied "to the accomplishment of its plain purpose, which is to assure the performance of the * * * *future* duty *finally* and faithfully to account for the moneys due." (Italics supplied.) See, also, Lyngen v. Tessum, 169 Minn. 304, 211 N.W. 314, 315. In the latter case the court held that when the probate court determined the amount of property "now in his hands as guardian," such finding was final and conclusive "both upon him and the sureties upon his bond."

The act "committed" here resulting in loss was failure to account for $5,230. This act could not occur before the time to account arrived. That time did not arrive until the administratrix was called upon, or it was her duty, to account under the law. She resigned on April 22, 1935, and asked that her account be approved and that she be discharged and her bond exonerated. At that time she withheld the $5,230 in question. The probate court on July 12, 1935, found that she then had the money "in her possession" and required her to account therefor. She failed to do so. She, then, "committed" the act from which the loss arose either on July 12, 1935, when she failed to obey the order of the court (In re Estate of Lustig, 265 N.Y. 517, 193 N.E. 300) or on April 22, 1935, when she did not include this sum in her account, but not before. The earlier date falls after May 1, 1933, from which it is apparent that the loss is covered by the assumption agreement.

Appellant relies upon the case of Southern Surety Company v. Tessum, 178 Minn. 495, 228 N.W. 326, 66 A.L.R. 1136, as holding that the exact time of the defalcation by the principal on the bond may be inquired into without reference to the judgment of the probate court allowing the final account. That decision is not in point here, and it does not overthrow the teaching of the Bromen and Lyngen Cases, supra. In the Southern Surety Company Case the suit was between various sureties for contribution, and it was held to be competent under the facts and issues to show the time and nature of the defaults. The issues in this case are not so complicated and the same rule is not applicable.

In the foregoing discussion of the loss to the estate on account of the failure of the administratrix to take possession of and sell the real estate and to account for the profit on the Lovesee note and mortgage, it has been assumed that the findings and judgment of the probate court, the same not having been appealed from, were res judicata. The appellant, however, does not consent to this proposition.

It is appellant's third contention that the findings of the probate court give rise to no estoppel and do not constitute an adjudication binding upon it. In brief of counsel, it is said: "It is at least doubtful whether the so-called 'findings of fact and conclusions, of law' of the probate court are of any effect as an adjudication beyond the determination of the amount due from the administratrix and the surcharging of her account in that sum."

It is settled that the probate court of Minnesota is the only court of original jurisdiction for the settlement and allowance of accounts of administrators, and that its judgments are final unless appealed from in the manner provided by statute. In re Estate of Richard J. O'Connor (O'Connor v. St. Joseph's House), 191 Minn. 34, 253 N.W. 18; First Trust & Savings Bank v. United States F. & G. Co., 163 Minn. 168, 203 N.W. 612; DeWolf v. Ericson, 175 Minn. 68, 220 N.W. 406; Mason's Minnesota Statutes 1927, §§ 8701, subd. 2, and 8705.

Such adjudication is conclusive, also in this collateral attack, not only as to the amount but as to all that was involved in the issues upon the hearing in that court. Such adjudication must include the items going to make up the total sum due and the grounds for including such items. Driscoll v. Board of Commissioners, ·161 Minn. 494, 201 N.W. 945; In re McDonald's Estate, 42 F.(2d) 266 (D.C.Minn.); In re Trust Created under Will of Fogg, 193 Minn. 397, 259 N.W. 6; Brotton v. Donovan, 177 Minn. 34, 224 N.W. 270; Pierce v. Maetzold, 126 Minn. 445, 148 N.W. 302.

It will be observed that the appellant has assumed and agreed to pay the liability of the surety on a fiduciary court bond. Were the surety itself defendant in the suit, it would be bound absolutely by the judgment of the probate court against the administratrix, and the question of collateral attack would not be involved. Pierce v. Maetzold, supra; Lyngen v. Tessum, 169 Minn. 304, 211 N.W. 314; Holden v. Turrell, 86 Minn. 214, 90 N.W. 395; Baldwin v. Maryland, 179 U.S. 220, 21 S.Ct. 105, 45 L.Ed. 160. The consideration for the assumption of liability passing to appellant consisted of a large part, if not all, of the valuable assets of the surety on the bond to which assets the appellee had a right to look for the payment of his claim. Under these circum-

stances, the appellant, after the consent of the appellee to the assumption agreement, became the principal obligor and the liability of the National Surety Company was secondary only. The law upon this point is the same both in the state of New York, where the assumption agreement was made, and in the state of Minnesota, where the judgment of the probate court was rendered. Lawrence v. Fox, 20 N.Y. 268; First Nat. Bank v. Chalmers, 144 N.Y. 432, 39 N.E. 331; Clark v. Howard, 150 N.Y. 232, 44 N.E. 695, 697; Woodruff v. Germansky, 233 N.Y. 365, 135 N.E. 601, 603; Fairchild v. Lynch, 99 N.Y. 359, 2 N.E. 20, 21; Peterson v. Herington, 169 Minn. 65, 210 N.W. 617, 618; Pinch v. McCulloch, 72 Minn. 71, 74 N.W. 897, 898; Heidahl v. Geiser Mfg. Co., 112 Minn. 319, 127 N.W. 1050, 140 Am.St. Rep. 493.

In the Clark Case, supra, a debtor sold a stock of merchandise to the defendant, and the defendant as a part of the purchase price assumed and agreed to pay the debt of the seller to the plaintiff. The plaintiff was not a party to the contract, and there was no consideration for the promise moving from the plaintiff to the defendant. The Court of Appeals of New York held:

"Where a debtor transfers property to a third person in consideration of his promise to pay the debt to the creditor, the latter may accept and adopt the promise, when it becomes known to him, and maintain an action upon it. When the promise in such cases is the consideration or condition upon which the third party has received the debtor's property, he thereby makes the debt his own, and assumes an independent duty of payment, irrespective of the liability of the principal or original debtor."

In the Fairchild Case, supra, the court stated the rule and the relation of the parties thus:

"The defendant's acceptance of the deed, with its assumption clause, made her a covenantor, as if an express agreement had been given. * * * By force of that covenant she became the principal debtor for the amount secured by the bond and mortgage, and bound to pay it in exoneration of plaintiff, the obligor in the bond; he standing merely as her surety for the debt."

In the Peterson Case, supra, the assumption clause in a deed was under con-

sideration, and the Supreme Court of Minnesota said:

"The assumption clause imposed absolute liability. * * * It was not merely a contract of indemnity. * * * We construe the agreement to pay the mortgage as the equivalent of imposing the same liability on the part of the defendants as if they had given the mortgage. * * * When defendants assumed the payment of the first mortgage they became, as between them and the plaintiff, the principal debtors."

The result is that the appellant under the contract of assumption succeeded to the liability of the National Surety Company on the bond to the extent covered by the contract. Appellant is bound by the same contractual tie which binds the original surety. It is true that it was formerly held in common-law courts that the beneficiary under an assumption agreement could not maintain an action on the contract because it was said there was no privity between him and the parties to the contract. But this conception no longer obtains in the State of Minnesota. Judge Stone specially concurring in Peterson v. Parviainen, 174 Minn. 297, 219 N.W. 180, 183, observes that, "With respect to contracts, privity is an effect rather than a cause. It denotes 'mutual or successive relationship to the same right of property' * * * or 'the relationship' between contracting parties. * * * It signifies a relationship and not what creates it. Privity of contract arises from the agreement which vests certain rights and imposes obligations from which privity results. So, with respect either to a party or a beneficiary, the first thing to determine is what rights he has under the contract, and, the presence of right being determined, privity necessarily follows. And if, with respect either to a party or a beneficiary, there is a right to enforce a contract, there is necessarily the relationship called privity. Therefore, to say that there is no right because there is no privity, rather than that there is no privity because there is no right, is a plain case of transposing cart and horse."

We hold that to the extent that the appellant assumed and agreed to pay the losses of the Olin estate under the bond, it is bound to the same obligations that bound the surety company and is estopped by the same judgment that estops the surety company. This is but a specific ap-

plication of the elementary rule that where the court has jurisdiction of the parties and the subject-matter of a particular case, its judgment is binding "between the parties or their privies in any subsequent case in which the same right is directly or collaterally involved." Hartford Life Insurance Co. v. Ibs, 237 U.S. 662, 673, 35 S.Ct. 692, 696, 59 L.Ed. 1165, L.R.A.1916A, 765; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 49, 18 S.Ct. 18, 42 L.Ed. 355; Schmitt v. Dahl, 88 Minn. 506, 93 N.W. 665, 668, 67 L.R.A. 590; Columbia Ins. Co. v. Mart Waterman Co. (C.C.A.2) 11 F.(2d) 216, 219.

The judgment of the District Court is affirmed.