**NATIONAL SURETY CORPORATION v. WILLIAMS.**

No. 11519.

Circuit Court of Appeals, Eighth Circuit.
April 9, 1940.

Rehearing Denied May 1, 1940.

Roy H. Callahan, of New York City (J. W. House, C. H. Moses, W. H. Holmes, and Eugene R. Warren, all of Little Rock, Ark., on the brief), for appellant.

Edward H. Coulter, of Little Rock, Ark. (Boone T. Coulter, of El Dorado, Ark., and Kenneth W. Coulter, of Little Rock, Ark., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment against the appellant, defendant in the district court, in an action tried to the court without a jury.

At the outset we are confronted with a motion by appellee to dismiss the appeal. The motion as amended is based upon two grounds: (1) That the transcript of the record was not filed within the time provided by law; and (2) that the points and specifications of error filed by appellant are not sufficient to present any question for review.

The situation giving rise to the claim that the appellant was tardy in filing the transcript in this court is as follows: Judgment was entered in the district court March 13, 1939. On that day appellant attempted to give notice of appeal by endorsing on the judgment notice of appeal and its allowance. On March 28, 1939, appellant filed notice of appeal in accordance with the requirements of Rule 73, subsection (a), of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. On May 2, 1939, appellant procured an order extending the time for filing the transcript. May 2, 1939, was more than 40 days after March 13, 1939, and less than 40 days after March 28, 1939. If the notice of appeal endorsed on the judgment was a legal notice of appeal and set the period of limitation in motion, the court was without jurisdiction to grant an extension of time. Rule 73(g) of the Rules of Civil Procedure. If the period was not set in motion until the notice of March 28, 1939, was filed the court had jurisdiction, and the motion to dismiss on the first ground should be overruled.

The Rules of Civil Procedure were in force at the time the judgment was entered on March 13, 1939. These rules superseded all former methods of appeal in civil cases to which they are applicable. See Note 1 to Rule 73 of Rules of Civil Procedure. The order of extension of time for filing the record in this court made on May 2, 1939, was within the 40 day period prescribed by subsection (g) of rule 73. But, assuming that the method of instituting an appeal prescribed by rule 73 is not exclusive, and that the allowance of the appeal noted in the judgment of March 13, 1939, was sufficient to confer jurisdiction upon this court (See Crump v. Hill, 5 Cir., 104 F.2d 36), it does not follow that this court is without jurisdiction and that the appeal must be dismissed. Rule 73(a) provides that: "Failure of the appellant to take any of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in this rule or, when no remedy is specified, for such action as the appellate court deems appropriate, which may include dismissal of the appeal." Rule 73(g) provides that: "In all cases the district court in its discretion and with or without motion or notice may extend the time for filing the record on appeal and docketing the action, if its order for extension is made before the expiration of the period for filing and docketing as originally prescribed * * *." The order of March 13, 1939 (the original order) prescribed no time for filing and docketing the record. Presented with this situation, and in view of the fact that no remedy for a delayed order of extension of time is prescribed by the rule, we are not disposed to dismiss the appeal. See Mutual Benefit Health & Accident Ass'n v. Snyder, 6 Cir., 109 F.2d 469.

The gist of the second ground of the motion is that the points and specifications of error are too voluminous and prolix. The assignments are subject to criticism in this regard, but under the circumstances present we are not disposed to dismiss the appeal for this reason. The Rules of Civil Procedure were new at that time, and counsel were exercising an abundance of caution. The motion to dismiss the appeal is denied.

The appellee has also filed a motion to tax a penalty for delay. The motion is based upon the theory that the appeal is without merit, and that it was taken only for delay. Upon examining the record we

are convinced that the appeal was taken in good faith. The motion is denied.

The controversy on the merits presents the question whether the appellant assumed liability as surety for certain surcharges in a guardian's account adjudged by the Circuit Court of Arkansas on appeal from the probate court.

On August 3, 1926, Gordon Freeman was appointed by the probate court of Union County, Arkansas, guardian of the person and property of the plaintiff, Walter Williams, then a minor. Freeman filed two guardian's bonds in the proceeding in the probate court, one dated February 1, 1927, for $29,000, and one dated February 19, 1927, for $10,000, on both of which bonds National Surety Company of New York was surety. The obligation of the first bond was that the guardian should faithfully account to his ward for the moneys coming into his hands, and that of the second that he "shall faithfully discharge his duties as Guardian * * * according to law."

While the bonds were in force and effect there came into the hands and possession of the guardian money of his ward in the sum of $11,887.32. Williams came of age March 30, 1933, and on June 10, 1933, Freeman filed his account and settlement in the probate court. Exceptions were filed to the account, and, on a hearing, the probate court found that the guardian was indebted to Williams in the sum of $5,224.81.

The guardian appealed from the decision of the probate court to the Circuit Court of Union County. When the cause came on for hearing in that court on November 8, 1937, the guardian did not appear, and the cause was "submitted to the court upon the pleadings and records from the Probate Court." Upon "inspecting the same" the court found that upon his appointment as guardian "there came into the hands and possession of the said Gordon Freeman the sum of $11,887.32 belonging to the said ward, Walter Williams; that on the 10th day of June, 1933, the said Gordon Freeman, Guardian, filed his purported settlement, which was the only settlement ever filed by said guardian, wherein said guardian accounted for the expenditure of $7,333.86." The court then set out the number of the items or vouchers as they appeared on the account or settlement of the guardian comprising the expendi-

tures allowed, and also listed a "Loan to Christine Bryan, $950.00", a "Loan to William Turnage, $2750.00" and "$25.00 per month for support, education and maintenance of Walter Williams for 82 months in accordance with order of Probate Court, $2050.00." "Total, $7,333.86." The court then proceeded: "leaving a balance in said guardian's hands as of June 10, 1933, of $4,553.46 unaccounted for; the court further finds that the said loans were unauthorized, and that said guardian's account should be surcharged with the amount thereof, to-wit, $3,700.00, making a total aggregate due from said Gordon Freeman, former guardian, the sum of $8,253.46" with interest from June 10, 1933. On November 10, 1937, the sum of $660 was paid on one of the unauthorized loans, leaving a balance due from the guardian on the surcharge of $7,593.46.

On April 29, 1933, the National Surety Company, by the superintendent of insurance of New York, as rehabilitator, entered into a contract with the appellant, National Surety Corporation, by the terms of which the appellant for due consideration assumed and agreed to pay all losses of the old company occurring on and after the 1st day of May, 1933, and all losses as to which no notice was received by the old company prior to midnight of April 30, 1933, under certain types of bonds enumerated, "subject to the following exclusions and exceptions: * * *

"(c) Liability for losses arising from, or caused by, acts committed prior to May 1st, 1933, under fiduciary court bonds covering risks involving estates held or administered by persons or corporations acting in a fiduciary or trust capacity."

In 1937 Williams brought this suit against the appellant. In his complaint he alleged the foregoing facts and demanded judgment for $7,593.46 with interest at 6 per cent. from June 10, 1933. It was further alleged that the judgment in the Circuit Court of Union County, Arkansas, against the guardian had not been paid, except the one payment of $660; that the acts causing the losses complained of occurred subsequently to May 1, 1933; and that the provisions of the contract of April 29, 1933, which seek to exclude liability for losses caused by acts committed prior to May 1, 1933, are null and void. The answer of the defendant (appellant) consisted of a general denial and an allegation that by the

terms of the contract of April 29, 1933, it did not assume liability for the claims asserted by the plaintiff.

Upon the trial in the district court it was conceded, as it is in this court, that the guardian's bonds were valid obligations of the National Surety Company as surety; that the judgment of the Circuit Court of Union County, Arkansas, is a valid judgment and that it was not appealed from; and that the assumption contract of April 29, 1933, is a valid contract, with the exception of the claim of the plaintiff that the provision excluding liability for losses occurring before May 1, 1933, is invalid. The principal issue in the lower court, as it is here, was whether the acts of the guardian causing the losses complained of were committed prior to May 1, 1933, or subsequently. On this issue the plaintiff introduced in evidence the judgment of the Union Circuit Court of November 8, 1937, and rested. He relied upon the recitations of that judgment entry. The appellant, over the objection of the appellee, introduced in evidence the account and settlement of the guardian filed in the probate court on June 10, 1933, and which was before and considered by the Circuit Court on appeal. It was stipulated that the Turnage and Bryan loans referred to in the judgment of the Circuit Court were made in 1927, 1928, and 1929.

Upon the case thus made, two questions are presented: (1) Did the losses adjudged by the Circuit Court of Arkansas occur prior or subsequent to May 1, 1933, within the meaning of the assumption contract of April 29, 1933? and (2) Is the provision of that contract excluding liability for losses occurring prior to May 1, 1933, valid?

1. Assuming the validity of the contract of April 29, 1933, there is no dispute between the parties as to its proper interpretation. There could not well be a disagreement upon this point. The language is simple. It has been heretofore construed by this court in the case of National Surety Corporation v. Ellison, 8 Cir., 88 F.2d 399, 403, and by the courts of New York in several cases. In the Ellison case, supra, this court said the corporation did not assume "Liability for losses arising from, or caused by, acts committed * * * before May 1st, 1933"; but that it did assume liability for such losses "arising from, or caused by, acts committed" after May 1, 1933. In so holding the court relied upon the plain language of the contract and the decision of the Supreme Court of New

York, Appellate Division, in the case of Coleman v. National Surety Corporation, 244 App.Div. 244, 278 N.Y.S. 826, wherein it was held that the corporation assumed liability under the contract for the trust estate as it existed May 1, 1933. The dispute here, as suggested above, is not with reference to the meaning of the contract, but with regard to its application to the proof. In other words, the dispute relates to the meaning and effect of the evidence.

■ The issue tendered by the plaintiff cast the burden upon him to prove that the losses occurred (1) after May 1, 1933, and (2) that they arose out of, or were caused by, acts of the guardian committed after May 1, 1933. Considering that the judgment of the Circuit Court was sufficient to sustain the burden and that it is res judicata he introduced the judgment in evidence and rested. Counsel for appellant then obtained a stipulation that the loans were made prior to May 1, 1933, and introduced in evidence the guardian's account of settlement which had been before the Circuit Court. Both these items of proof were objected to on the grounds in substance that they were irrelevant and immaterial. The facts, however, that the loans were made prior to May 1, 1933, and that the settlement was considered by the Circuit Court were not denied.

Considering first the proof in respect of the $3,700.00 of loans, it will be observed that when the plaintiff rested he had not shown when the loss occurred, nor when the act committed by the guardian out of which the loss arose occurred. He had not sustained the burden of proof resting upon him, even had the stipulation as to the dates of the loans not been made. The judgment of the Circuit Court does not state when the loans were made; but that question was settled by the stipulation. It showed conclusively that the unauthorized act of making the loans occurred prior to May 1, 1933. The surcharge for this item clearly was not caused by, nor did it arise out of, an act committed after May 1, 1933.

Neither could the plaintiff rely upon the judgment of the Circuit Court to establish the dates of the losses aggregating the sum of $4,553.46. Plaintiff errs in construing the words of the judgment, "leaving a balance in said guardian's hands as of June 10, 1933, of $4,553.46 unaccounted for", to mean that the guardian had these funds in his possession at that time unexpended. The judgment entry must be read

in its entirety properly to be construed. The court found that upon the guardian's appointment "there came into his hands and possession * * * $11,887.32"; and by "inspecting" the "settlement" filed by the guardian the court selected the items by number, description and amount which had been expended "in accordance with order of the Probate Court", and disallowed all other items shown on the "settlement". The emphasis in the judgment entry in reference to the $4,553.46 item belongs on the words "unaccounted for." It is not a finding, when fairly construed, that the guardian had these funds in his possession on June 10, 1933. This is shown by comparing the language in this clause of the judgment with the language used in connection with the original fund of $11,887.32. The court to denote possession there said this sum "came into the hands and possession of the said Gordon Freeman." The whole judgment entry shows plainly that the court was considering and passing on the propriety of the items listed by the guardian in his purported "settlement." An examination of the settlement leaves no doubt as to the meaning of the judgment entry, for it shows the dates when the expenditures were made; and in view of the ambiguity of the judgment entry it was admissible to show the dates. It shows that all of the items making up the sum of $4,553.46 were expended prior to May 1, 1933, except items aggregating $155.75, for which the appellant admits liability. Certainly the act giving rise to the loss was committed by the guardian when he expended the trust fund without the authority of the Probate Court. That is the meaning and the only meaning of the judgment of the Circuit Court.

It is apparent from the brief that the plaintiff's theory in regard to the nature of the proof necessary to sustain the burden of proof was due to a misapprehension of the decision of this court in the case of National Surety Corporation v. Ellison, supra. That case was submitted upon motions for judgment. There were but two items of loss, and the only question to be determined on the merits was whether the acts giving rise to the losses had been committed by the administratrix before or after May 1, 1933. Owing to the nature of the two items a determination of the date of the act required a consideration of the admitted facts and a construction of the probate laws of Minnesota and the orders of the Probate Court pursuant to such laws.

Such is not the situation in the instant case. In this case the facts in evidence fail to support the burden of proof resting upon the plaintiff without reference to the probate laws of Arkansas or the powers of the probate courts.

2. The appellee alleged in his petition and argues in his brief that the appellant should be held liable for the debts of the National Surety Company without regard to the limitations in the contract of April 29, 1933. This contention is based upon the theory that the appellant received practically all the assets of the old company and should therefore be held liable for its debts as a matter of law.

The record is almost completely lacking in any evidence to sustain this contention. It clearly appears from the transcript of the record of the rehabilitation proceedings in New York and from the oral testimony in the trial below that the new corporation received assets of the old company of an approximate market value of $11,858,000. In return the new corporation transferred all of its stock to the Superintendent of Insurance of the State of New York who had charge of the affairs of the old company. It also appears from the record of the New York proceedings that following the transfer the old company had assets of an approximate market valuation of $32,760,000, including the stock of the new corporation valued at $4,000,000. The testimony is to the effect that this stock was later sold by the Superintendent of Insurance and that the cash proceeds of $10,031,000 were held by him for the benefit of the creditors of the old company. It is therefore clear that on the evidence in this record the appellee's contention can not be sustained.

In its answer and amended answer in the District Court the appellant denied liability. At the conclusion of the trial in requested findings of fact and conclusions of law it in effect offered to confess judgment for $155.75 with interest from the date of the demand made upon it. Since that is the sum for which we find the plaintiff is entitled to recover the judgment will be for that amount, and as so modified the judgment is affirmed. All costs in the District Court incurred prior to March 14, 1939, should be taxed to the appellant and costs incurred since that date, including the costs in this court, should be taxed to the appellee.

Modified and affirmed.